## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>　　　　　　　　　　　Plaintiff,<br>**v.**<br><br>**WESTERN RADIO SERVICES CO.**,<br>　　　　　　　　　　　Defendant.<br><br>**Richard OBERDORFER** and **WESTERN RADIO SERVICES CO.**,<br>　　　　　　　　　　　Plaintiffs,<br>**v.**<br><br>**Holly JEWKES**, District Ranger, Crescent Ranger District, **UNITED STATES FOREST SERVICE** and **Dan SMITH**, Forest Service enforcement officer,<br>　　　　　　　　　　　Defendants. | **Case No.: 11-cv-00638-SI, 11-cv-06209-SI**<br><br><br><br><br>**OPINION AND ORDER** |

**SIMON, District Judge.**

These consolidated cases relate to a disagreement between the U.S. Forest Service ("Forest Service") and Richard Oberdorfer and his communications company, Western Radio Services ("Western Radio"). Western Radio operates a tower and generator building on land it leases from the Forest Service at the Walker Mountain Communication Site ("Walker Mountain") within the Deschutes National Forest. In 2005, Western Radio applied to the Forest

Service to replace its communications tower on Walker Mountain and to expand its existing facilities. The parties in these consolidated cases disagree about whether the Forest Service gave Western Radio final approval for its project and whether the subsequent construction work undertaken by Western Radio was in violation of its lease.

The Forest Service, represented by the United States, sued Western Radio for breach of lease, negligence *per se*, and trespass. Western Radio has counterclaimed, seeking judicial review of the Forest Service's actions under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"). In a separate lawsuit, Western Radio and Mr. Oberdorfer invoked the APA in suing the Forest Service and Ms. Jewkes (in her official capacity) for violating the National Forest Management Act and the National Environmental Policy Act. They also brought *Bivens* actions against Ms. Jewkes and Mr. Smith in their personal capacities for alleged violations of Mr. Oberdorfer's constitutional rights.[1] These two lawsuits have been consolidated.

The United States has moved to dismiss Western Radio's APA counterclaim in the lead case, and Ms. Jewkes and Mr. Smith have moved to dismiss Mr. Oberdorfer's *Bivens* claims against them in their personal capacities in the associated case. For the reasons that follow, both of these motions are GRANTED.

## BACKGROUND

In considering a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations in the complaint and construe them in favor of the non-moving party. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

---

[1] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

OPINION AND ORDER – Page 2

The Walker Mountain Communication Site is located within the Crescent Ranger District of the Deschutes National Forest. Holly Jewkes is the District Ranger for the Crescent Ranger District, and Mr. Smith is a law enforcement officer for the Forest Service. In November 2010, Mr. Smith advised Klamath County that Western Radio had an "illegal" tower on Walker Mountain, which, Mr. Oberdorfer contends, led the County to file a code enforcement action against Western Radio. Am. Compl. ¶ 39. Mr. Oberdorfer also asserts that Ms. Jewkes may have been involved in causing Klamath County to take that legal action, although he acknowledges that he currently has no evidence to support this allegation. *Id.* ¶ 40. Likewise, Mr. Oberdorfer alleges (though he admits he lacks evidentiary support) that Ms. Jewkes and Mr. Smith "were involved in causing the U.S. Department of Justice to file a federal complaint falsely alleging that plaintiffs have an illegal tower on Walker Mountain." *Id.* That federal complaint is the lead case now consolidated with Mr. Oberdorfer and Western Radio's associated action.

According to Mr. Oberdorfer, this conduct violated his constitutional rights in two respects. First, he asserts that the alleged communications among Mr. Smith, Ms. Jewkes, the Klamath County code enforcement office, and the U.S. Department of Justice constituted retaliation for his previous legal actions against the Forest Service, which is conduct protected under the free speech clause of the First Amendment. Second, he asserts that the Forest Service treated him differently than other similarly situated individuals. He argues that this difference in treatment amounted to a violation of his right to equal protection (a so-called "class of one" claim). For both of these alleged constitutional violations, Mr. Oberdorfer seeks monetary damages pursuant to *Bivens*.

OPINION AND ORDER – Page 3

In responding to the breach of lease complaint brought by the United States, Western Radio asserted several counterclaims. This court initially dismissed those counterclaims, with leave to amend only the APA counterclaim. Western Radio filed an amended answer with a new APA counterclaim, which alleges that the Forest Service acted arbitrarily and capriciously, in violation of the APA, when it advised Klamath County code enforcement about Western Radio's "illegal tower" leading to an enforcement action; when it advised Western Radio's customer that the Walker Mountain replacement tower was illegal; and when it filed this federal complaint. Am. Answer ¶ 40.

The United States has moved to dismiss this counterclaim. Meanwhile, in lieu of answering Western Radio and Mr. Oberdorfer's complaint, Ms. Jewkes and Mr. Smith moved to dismiss the *Bivens* claims asserted against them.

## DISCUSSION

### I.    Motion to Dismiss the APA Counterclaim

In its counterclaim, Western Radio alleges that the Forest Service's communications with Klamath County and a customer of Western Radio, as well as the instigation of the present civil suit, constitute "final agency action." Am. Answer ¶ 40. These are not, however, final agency actions.

The primary agency action implicated in this case is the alleged denial of Western Radio's application to expand and replace its existing facilities on Walker Mountain. That action has not yet been finalized, or if it has, Western Radio has not yet pursued its administrative remedies in challenging that decision. The Department of Justice's decision to file a complaint against Western Radio does constitute an agency action, but the Attorney General's decision to

OPINION AND ORDER – Page 4

pursue litigation – at least when not clearly *ultra vires* – is the type of agency action "committed to agency discretion by law" and therefore removed from judicial review under the APA. 5 U.S.C. § 701(a)(2); *see, e.g.*, *Energy Transp. Group, Inc. v. Skinner*, 752 F. Supp. 1, 13 (D.D.C. 1990) (conduct of litigation committed to the Attorney General's discretion, citing 28 U.S.C. § 516[2]); *cf. United States v. Carpenter*, 526 F.3d 1237, 1241-42 (9th Cir. 2008) (Attorney General's discretion to settle cases typically not reviewable, absent allegation that the Attorney General exceeded his legal authority).

This leaves the alleged communication between the Forest Service and third parties. An agency's communication to another governmental body or a private entity about the status of an agency's action is not an "agency action." The APA defines an "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). These terms are all likewise defined in § 551, and none of these definitions encompass the act of communicating information to a different governmental entity or to a private party.

Because Western Radio has not identified any final agency action within the meaning of the APA, the United States' motion to dismiss the APA counterclaim is GRANTED. Because I have previously dismissed this counterclaim with leave to amend, any further attempts to re-plead this counterclaim would be futile. Thus, the counterclaim is dismissed without furtherleave to amend.

---

[2] This statute provides that, "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General."

## II.    Motion to Dismiss the *Bivens* Claims

In moving to dismiss Mr. Oberdorfer's *Bivens* claims, Ms. Jewkes and Mr. Smith raise

three arguments: First, they argue that no *Bivens* remedy is available to redress the constitutional

violations that Mr. Oberdorfer alleges. Second, they invoke their qualified immunity as federal

officers. Third, they argue that the complaint's sparse allegations fail to provide adequate notice

as required by Rule 8(a) of the Federal Rules of Civil Procedure and the Supreme Court's recent

decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556

U.S. 662 (2009). Each of these arguments has merit and may independently provide sufficient

grounds for granting the motion. I focus, however, on qualified immunity because of the

importance of the principles at stake in that doctrine and because it demonstrates why leave to

amend would be futile.

### A.    *Qualified Immunity*

Under the doctrine of qualified immunity, "government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not merely

a defense to liability, but an entitlement to avoid the burden of discovery and continued

litigation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v.

Callahan*, 555 U.S. 223 (2009). "Where the defendant seeks qualified immunity, a ruling on that

issue should be made early in the proceedings so that the costs and expenses of trial are avoided

where the defense is dispositive." *Id.* at 200. Indeed, the question of qualified immunity should

be resolved at the earliest possible stage of litigation. *Id.* at 201.

To overcome Ms. Jewkes' and Mr. Smith's defense of qualified immunity at this early stage, Mr. Oberdorfer would have to plead facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, --- U.S. ---, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow*, 457 U.S. at 818). Courts have discretion to choose which of these two prongs to analyze first. *Id.* In considering the present motion to dismiss, the second question – whether the right was clearly established at the time of the defendant's action – is dispositive.

### B. Class-of-One Claim

Even when a plaintiff is not a member of a protected class, she may still bring an equal protection claim if she has been denied the equal protection of the law. In such a "class of one" claim, the plaintiff must demonstrate that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (identifying elements of a class-of-one claim).

Both *Olech* and *Gerhart* involved property owners who received objectively different treatment by the local municipality when compared to their similarly situated neighbors. *See Olech*, 528 U.S. at 563, 565; *Gerhart*, 637 F.3d at 1022-23. As the Supreme Court later noted, "[w]hat seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008). When the government action in question involves discretionary decisionmaking, on the other hand, class-

OPINION AND ORDER – Page 7

of-one claims may not be available. *See id.* at 603; *see also id.* at 608-09 (rejecting application of class-of-one claims in public employment context).

Mr. Oberdorfer's complaint only alleges the bare legal requirements of a class-of-one claim. He does not allege who is similarly situated and what treatment differed between them. At oral argument, counsel suggested that other users on Walker Mountain had not been held to the same requirements as Mr. Oberdorfer when they sought similar permits from the Forest Service. This theory, however, is foreclosed by the Ninth Circuit's holding in a prior dispute between Western Radio and the Forest Service. In *Western Radio Services Co. v. U.S. Forest Service*, 578 F.3d 1116 (9th Cir. 2009), the Ninth Circuit held that no *Bivens* remedy was available for a class-of-one claim premised on an agency's grant or denial of a use permit because the APA provided an adequate remedy. *See id.* at 1122-23; *see also Wilkie v. Robbins*, 551 U.S. 537, 552-53 (2007) (APA provides adequate remedy for agency actions, negating need for separate *Bivens* action). Leave to amend the class-of-one claim to clarify such a theory would therefore be futile.

The only other possibility is that Mr. Oberdorfer means to allege (1) that other users of the Walker Mountain site were similarly situated in that they had openly disagreed with the Forest Service over the approval or rejection of permits and (2) that the Forest Service treated them differently in that it did not retaliate against them by encouraging others to investigate or to instigate litigation. In addition to the fact that Mr. Oberdorfer has never suggested in this court that this is what he means, such a long and subjective causal chain is far removed from the direct and objective difference in treatment recognized in *Olech* and *Gerhart* as a violation of equal protection. It is far removed even from *Enquist*, where the Supreme Court *declined* to recognize a class-of-one claim. No precedent comes close to suggesting that this causal chain could support

a class-of-one claim, which would make it impossible for Mr. Oberdorfer to overcome the federal officers' defense of qualified immunity.  Thus, leave to amend the claim to state such a theory would be futile.

Because Mr. Oberdorfer's class-of-one claim alleges only legal conclusions and gives no real notice of the substance of the complaint, it must be dismissed. Because there is no theory that Mr. Oberdorfer could advance to clarify this claim that would not run afoul of direct precedent or would overcome Ms. Jewkes' and Mr. Smith's defense of qualified immunity, leave to amend is denied.

### C.  First Amendment Retaliation

Government officials may violate an individual's constitutional rights if they retaliate against the individual for his exercise of free speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). To establish such a violation, the plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). Specifically, the plaintiff bears the initial burden to show that his conduct was a "substantial" or "motivating" factor in the adverse government action. *Mt. Healthy*, 429 U.S. at 287. The defendant may nonetheless defeat plaintiff's claim by showing, by a preponderance of the evidence, that "it would have reached the same decision … even in the absence of the protected conduct." *Id.* That is, there is no unconstitutional retaliation if the government official's conduct was otherwise legal and legitimate. *See Wilkie*, 551 U.S. at 556. Even if the government official acts with malice, his conduct is not retaliatory if it is objectively justified. *See id.* at 558 & n.10.

OPINION AND ORDER – Page 9

According to Mr. Oberdorfer's complaint, the retaliatory conduct was Mr. Smith's and Ms. Jewkes' alleged communications that induced others to take action against Western Radio. Even accepting these allegations as true, such conduct would not violate clearly established constitutional rights, at least not absent a showing that the communication served no legitimate government purpose. Mr. Oberdorfer has not alleged that Mr. Smith and Ms. Jewkes lacked any legitimate purpose in communicating with external parties, or that the resulting lawsuits were groundless. More generally, the proposition that a government agent may violate someone's constitutional rights by communicating the status of an ongoing administrative proceeding to an outside party is far removed from the types of First Amendment retaliation claims previously recognized by the courts.

To be clear, it is not necessary that a prior case be directly on point before qualified immunity can be overcome, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 131 S. Ct. at 2083. Further, what constitutes "clearly established law" must not be considered "at a high level of generality." *Id.* at 2084; *cf. Wilkie*, 551 U.S. at 561 (refusing to consider retaliation claim at high level of generality as that "would invite claims in every sphere of legitimate government action"). Mr. Oberdorfer has not identified any cases that suggest the sorts of communications alleged here could constitute First Amendment retaliation, and I have not found any myself. If given an opportunity to amend and clarify this claim, Mr. Oberdorfer still would not be able to overcome Ms. Jewkes' and Mr. Smith's qualified immunity. Therefore, the retaliation claim is dismissed without leave to amend.

//

//

OPINION AND ORDER – Page 10

## CONCLUSION

For the foregoing reasons, both motions to dismiss are GRANTED without leave to amend.

Dated this 13th day of February, 2012.


/s/ Michael H. Simon
Michael H. Simon
United States District Judge

OPINION AND ORDER – Page 11