IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>                    Plaintiff,<br>     v.<br><br>**WESTERN RADIO SERVICES CO.**,<br>                    Defendant.<br><br>**Richard OBERDORFER** and **WESTERN RADIO SERVICES CO.**,<br>                    Plaintiffs,<br>     **v.**<br><br>**Holly JEWKES**, District Ranger, Crescent Ranger District, and **UNITED STATES FOREST SERVICE**,<br>                    Defendants. | Case No. 3:11-cv-00638-SI (Lead Case),<br>Case No. 6:11-cv-06209-SI<br><br><br>**OPINION AND ORDER** |

**SIMON, District Judge.**

These consolidated cases relate to a disagreement between Richard Oberdorfer and his telecommunications company, Western Radio Services ("Plaintiffs"), on one side, and the U.S. Forest Service ("Forest Service"), on the other. Plaintiffs operate a telecommunications tower and generator building on land leased from the Forest Service at the Walker Mountain Communication Site ("Walker Mountain") within the Deschutes National Forest.

As relevant to the present motion, Plaintiffs challenge the Forest Service's approval of a special use permit for AT&T to construct two new radio communication towers and a building at Walker Mountain. First, Plaintiffs allege that the Forest Service did not comply with 36 C.F.R. § 251.54 when it pre-screened AT&T's special use permit application, thereby violating the National Forest Management Act ("NFMA"), 16 U.S.C. § 1600 *et seq*. Second, they allege that the Forest Service improperly considered AT&T's application separately from its prior approval, in 2009, of a new tower to be built and operated by the Bonneville Power Administration ("BPA"). Plaintiffs argue that by "segmenting" the consideration of the AT&T and BPA towers, or by failing to take the BPA tower into account when assessing the cumulative impacts of the AT&T proposal, the Forest Service violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq*.

The Forest Service has moved for summary judgment on both claims (Doc. 73 in the Lead Case). It argues that Plaintiffs lack standing to bring their NFMA and NEPA claims and that Plaintiffs did not exhaust their NEPA arguments before the agency. For both of these reasons, the Forest Service contends this court lacks jurisdiction over Plaintiffs' claims. The Forest Service also argues for summary judgment on the merits of Plaintiffs' claims. This court reviews an agency's compliance with NEPA and NFMA under the Administrative Procedure Act ("APA")[1] and may only set aside an agency decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). Because Plaintiffs lack standing to bring their NEPA claim and because their NFMA claim fails on the merits as a matter of law, the Forest Service's motion for summary judgment (Doc. 73 in the Lead Case) is GRANTED.

---

[1] *See Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc).

OPINION AND ORDER – Page 2

I.  **Summary Judgment Standard**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and must draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). "Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

II. **NEPA Claim**

The Forest Service argues that this court lacks jurisdiction over Plaintiffs' NEPA claim because Plaintiffs lack standing. Plaintiffs bear the burden of establishing that they satisfy both constitutional and statutory standing requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). Only one plaintiff need have standing for this court to have jurisdiction. *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006). Because their standing is challenged at the summary judgment stage, Plaintiffs must adduce specific facts that show each of the elements of standing. *Defenders of Wildlife*, 504 U.S. at 561; *Nat'l Wildlife Fed'n*, 497 U.S. at 884-85. Conclusory allegations are insufficient. *Nat'l Wildlife Fed'n*, 497 U.S. at 888.

First, to establish the existence of constitutional standing, which requires a "case" or "controversy" under Article III of the Constitution, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural

OPINION AND ORDER – Page 3

or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

Second, when a plaintiff challenges an agency decision under the APA, the plaintiff must also demonstrate statutory standing, which requires the plaintiff to "establish that the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Nat'l Wildlife Fed'n*, 497 U.S. at 883 (emphasis in original). "We have long described the zone of interests that NEPA protects as being environmental. … Accordingly, we have consistently held that purely economic interests do not fall within NEPA's zone of interests[.]" *Ashley Creek Phosphate Co. v. Norton*, 420 F.3d 934, 939-40 (9th Cir. 2005) (citations omitted); *see also Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir. 1993) ("The purpose of NEPA is to protect the environment, not the economic interests of those adversely affected by agency decisions. … Therefore a plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA." (citations omitted)); *Ranchers Cattlemen Action Legal Fund United Stock Growers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078, 1103 (9th Cir. 2005); *W. Radio Servs. Co., Inc. v. Espy*, 79 F.3d 896, 902-03 (9th Cir. 1996).

Plaintiffs argue that they assert environmental as well as economic harms, which would bring Plaintiffs within NEPA's zone of interests. *See Ranchers Cattlemen Action Fund*, 415 F.3d

at 1103. No environmental harms, however, are alleged in Plaintiffs' complaint. Instead, in a subsequent declaration, Mr. Oberdorfer has averred:

> I recreate, work and travel in and about the Deschutes National Forest and the Walker Mountain area in particular. Over the past 30 years I have watched the mountaintop change from a lookout facility with a few antennas sticking up over the top of the trees to what can be best described as a forest industrial site. This proliferation makes me sick every time I drive by or have to visit the site.

Decl. Oberdorfer at 1.[2]

This statement is insufficient to establish the requisite environmental harm. The alleged aesthetic harm was caused by the Forest Service's past actions in approving projects on Walker Mountain over the last thirty years. *See Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1150 (2009) (plaintiff cannot rely on past harm to establish standing). Mr. Oberdorfer has not explained how the specific project at issue in this lawsuit will cause him an aesthetic, recreational, or other environmental harm. Indeed, the approved project would result in no net increase in the number of communications towers or buildings on Walker Mountain because the project also involves the removal of five towers and a building. *See* AR4341; *cf. W. Radio Servs. Co., Inc. v. Espy*, 188 U.S. Dist. LEXIS 22901 (Feb. 2, 1996), at *14-15, *aff'd* 79 F.3d 896 (finding Mr. Oberdorfer lacked standing in a similar dispute for a similar reason).

In addition, the harm asserted is neither concrete nor specific, and it is not adequately differentiated from the interests of the general public. *See, e.g.*, *Friends of the Earth*, 528 U.S. at

---

[2] Western Radio did not submit an additional declaration establishing its own standing. Indeed, business entities generally do not have aesthetic or recreational interests, and they cannot support their standing by asserting the aesthetic or recreational interests of their employees or customers. *See, e.g.*, *Am. Independence Mines & Minerals Co. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1241, 1252 (D. Idaho 2010). The court thus presumes that Western Radio intends to rely on Mr. Oberdorfer's claim of standing.

OPINION AND ORDER – Page 5

705; *League of Wilderness Defenders-Blue Mountain Biodiversity Project v. Bosworth*, 383 F. Supp. 2d 1285, 1290-92 (D. Or. 2005) (spending time hiking and recreating in general project area, appreciating old growth trees and high quality riparian areas, and concern about impact of project on old growth habitat and water quality were not sufficient to establish a concrete and particular harm distinguished from harm to general public). The court also notes that Mr. Oberdorfer is alleging an aesthetic harm from conduct—the construction of a new tower on Walker Mountain—in which he seeks to engage himself. *Cf. Nev. Land Action Ass'n*, 8 F.3d at 716; *Espy*, 188 U.S. Dist. LEXIS 22901, at *6. Mr. Oberdorfer has not presented a legitimate environmental harm sufficient to confer standing.

Because Plaintiffs assert only economic harms, their claim does not fall within NEPA's zone of interests. The court therefore does not need to reach the Forest Service's additional arguments. It nonetheless notes that those additional arguments further support the granting of summary judgment on this claim. The Ninth Circuit does not strictly apply the requirement that parties exhaust their administrative remedies in environmental lawsuits. *See Or. Natural Desert Ass'n v. McDaniel*, 751 F. Supp. 2d 1151, 1159-62 (D. Or. 2011) (summarizing Ninth Circuit cases). Even under the Ninth Circuit's lenient standard, however, Plaintiffs did not raise—even implicitly or inexactly—their segmentation and cumulative impact arguments before the agency. Both arguments also would likely fail on the merits: the BPA and the AT&T applications were not "connected actions" that must be considered together, *see* 40 C.F.R. § 1508.25(a)(1) (listing three conditions that would render actions "connected," none of which apply here),[3] and the

---

[3] Defendants argue that § 1508.25 only applies to environmental impact statements. Indeed, the regulation only references environmental impact statements, but the Ninth Circuit has repeatedly applied § 1508.25 to both environmental impact statements and environmental assessments. *See, e.g.*, *Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105,

OPINION AND ORDER – Page 6

Forest Service did take the BPA tower into account when analyzing the impacts of the AT&T proposal, *see* Administrative Record ("AR") 4294-4303. Regardless of these additional grounds, however, the court grants summary judgment to the Forest Service on Claim IV because Plaintiffs lack standing to bring their NEPA claim.

### III.    NFMA Claim

####    A.  Standing

The Forest Service also challenges Plaintiffs' standing to bring their NFMA claim. Plaintiffs allege that the Forest Service violated the procedures set forth in 36 C.F.R. § 251.54 when it pre-screened AT&T's proposal. This regulation was promulgated not under NFMA, but under the authority of 16 U.S.C. § 497 and other statutes. *See id.* § 251.53 (listing statutory authorities for special use permits, not including NFMA); *see also KOLA, Inc. v. United States*, 882 F.2d 361, 362 n.1 (9th Cir. 1989) (explaining that special use permits for radio towers on Forest Service land are authorized by 16 U.S.C. § 497 and other non-NFMA statutes, with procedures and standards for such permits found in 36 C.F.R. § 251.54). *But see W. Radio Servs. Co., Inc. v. Glickman*, 113 F.3d 966, 970 (9th Cir. 1997) (assuming without discussion that NFMA provides the authority for 36 C.F.R. § 251.54); *Espy*, 79 F.3d at 900 (same).

At oral argument, the court granted Plaintiffs' oral motion to amend their NFMA claim to allege instead a violation of 16 U.S.C. § 497. Hr'g Tr. 73-74 (May 11, 2012). Section 497 authorizes the Secretary of Agriculture to permit, among other things, "the use and occupancy of suitable areas of land within the national forest … for the purpose of constructing or maintaining

---

1118 (9th Cir. 2000), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011); *W. Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1195 (9th Cir. 1997).

OPINION AND ORDER – Page 7

buildings, structures, and facilities for industrial or commercial purposes whenever such use is related to or consistent with other uses on the national forests." In supplemental briefing, the Forest Service conceded that Plaintiffs' claim falls within the "zone of interests" of § 497. *See* Supplemental Br. Supp. Fed. Defs.' Mot. Summ. J. at 2 n.1.

The Forest Service still argues, however, that Plaintiffs lack constitutional standing under Article III to bring this claim. The court disagrees. The court reads Plaintiffs' complaint as asserting a procedural injury. Under Ninth Circuit precedent, plaintiffs alleging a procedural injury must, at the summary judgment stage, adduce sufficient facts to raise a genuine question that: "(1) the [Forest Service] violated certain procedural rules; (2) these rules protect [Plaintiffs'] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969-70 (9th Cir. 2003). Because plaintiffs may have standing to bring suits that are ultimately unsuccessful, they need not *prove* each of these conditions in order to establish standing; setting too high a bar at this stage would conflate the standing inquiry with the merits inquiry. *See id.* at 971 n.5; *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011). Further, if a plaintiff makes an adequate showing for each of these three conditions, he will have established an injury-in-fact, at which point the remaining causation and redressability requirements for Article III standing are relaxed. *See Citizens for Better Forestry*, 341 F.3d at 975; *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001).

Plaintiffs argue that the Forest Service violated the procedural rules in 36 C.F.R. § 251.54. Because Plaintiffs' communications tower is an authorized existing use of Walker Mountain, these procedures, at least in part, protect Plaintiffs' concrete interests. Plaintiffs

OPINION AND ORDER – Page 8

further argue that the allegedly flawed application process will harm their interests due to interference from the new towers. Viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in favor of the Plaintiffs, the court holds that Plaintiffs have made the necessary showing of an injury-in-fact, as well as causation and redressability. The court views some of the arguments raised in the Forest Service's supplemental briefing, *see* Supplemental Br. Supp. Fed. Defs.' Mot. Summ. J. at 3, as more correctly addressing the merits of Plaintiffs' claim rather than standing. The court turns then to the merits.

### B. Merits

Plaintiffs argue that the Forest Service violated 16 U.S.C. § 497 because it did not comply with the procedures set forth in 36 C.F.R. § 251.54(e)(1)(v).[4] That provision directs the Forest Service to conduct an initial screening of proposals for special use permits to ensure that "[t]he proposed use will not unreasonably conflict or interfere with administrative use by the Forest Service, other scheduled or authorized existing uses of the National Forest System, or use of adjacent non-National Forest System lands." Plaintiffs have not provided any facts that could establish that Defendants acted arbitrarily and capriciously when they preliminarily concluded as part of this initial screening that AT&T's proposal would not "unreasonably conflict or interfere with … authorized existing uses" of the Walker Mountain site.

First, the regulation only requires the Forest Service to screen out, upon initial review, proposals that would *unreasonably* conflict or interfere with authorized existing uses. As the Forest Service explained when it adopted the regulation, "[t]he criterion is limited to

---

[4] At oral argument, Plaintiffs clarified that this claim rests solely on the alleged violation of 36 C.F.R. § 251.54(e)(1)(v). Hr'g Tr. 54 (May 11, 2012). The court therefore does not consider the other arguments raised by Plaintiffs in a cursory fashion in their reply brief regarding other subsections of § 251.54.

OPINION AND ORDER – Page 9

unreasonable conflicts or interference; some conflict or interference with existing uses would still be allowed." 63 Fed. Reg. 65950, 65955. In an early letter to the other users of Walker Mountain, including Plaintiffs, Holly Jewkes of the Forest Service reported that the AT&T proposal met the Forest Service's initial screening requirements. In particular, she noted that the proposal "is consistent with the Walker Mountain Communication Site Plan, as amended and can be made compatible with existing uses at the site. Normal protocol would be followed to ensure no interference with existing users." AR5044.

Second, the Forest Service relied on other policies and procedures already in place to correct any interference problems that might subsequently arise. This reliance was not arbitrary and capricious, particularly as there is no evidence in the record that these policies and procedures are inadequate to protect Plaintiffs' interests. As Ms. Jewkes explained:

> AT&T and Walker Range Patrol Association solicited comments and offered a site visit since October 2010 after their application for a lease to the Forest Service was accepted. They have been flexible in locating their equipment to minimize potential for interference and allowed the towers a variance of up to 20 feet to eliminate physical blockage of anybody's signal. Using the Federal Communication Commission with their licensing procedure and good faith efforts between the users, I am convinced all the uses would be compatible. Prior to issuing authorization for construction, there will be a 30-day coordination among users per Forest Service Handbook 2709, Chapter 90, Section 94.5 direction. There has never been a documented case of interference among users on Walker Mountain Electronic site.

AR4342. Plaintiffs did not provide comments during the thirty-day technical review, or coordination, period. AR4547-4548. There is no evidence in the record, other than Plaintiffs' protestations, that irremediable interference would be caused by the new towers. In sum, the Forest Service did consider the proposal's compatibility with other uses and did not ignore evidence to the contrary. Because the Forest Service did not act arbitrarily and capriciously in its

OPINION AND ORDER – Page 10

application of 36 C.F.R. § 251.54(e)(1)(v), the court grants the Forest Service's motion for summary judgment as to Claim III. *Cf. Espy*, 79 F.3d at 902 (reaching similar conclusion regarding Forest Service's application of § 251.54); *Glickman*, 113 F.3d at 971 (same).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment (Doc. 73 in the Lead Case) is GRANTED.

Dated this 25th day of June, 2012.

    /s/ Michael H. Simon
Michael H. Simon
United States District Judge