**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>　　　　　　　　　　Plaintiff,<br>　　v.<br>**WESTERN RADIO SERVICES CO.**,<br>　　　　　　　　　　Defendant.<br><br>**UNITED STATES CELLULAR OPERATING COMPANY OF MEDFORD**,<br>　　　　　　　　　　Intervenor-Plaintiff,<br>　　v.<br>**WESTERN RADIO SERVICES CO.**,<br>　　　　　　　　　　Defendant. | Case No. 3:11-cv-00638-SI (Lead Case),<br>Case No. 6:11-cv-06209-SI<br><br>**OPINION AND ORDER** |

**SIMON, District Judge.**

　　Western Radio Services Co. ("Defendant" or "Western Radio") operates a telecommunications tower and generator building on land leased from the U.S. Forest Service ("Plaintiff" or "Forest Service") at the Walker Mountain Communication Site ("Walker Mountain") within the Deschutes National Forest. In 2010, Western Radio built a new tower and made other modifications to its facilities on Walker Mountain. The Forest Service asserts that these improvements were not authorized and sues Western Radio for breach of contract, negligence *per se*, and trespass. The Forest Service has moved for summary judgment on its breach of contract and trespass claims. Western Radio has cross-moved for summary judgment

on all three claims.[1] For the reasons that follow, the court GRANTS the Forest Service's motions (Dkts. 94, 108), DENIES Western Radio's motion (Dkt. 113), and GRANTS the Forest Service's oral motion to voluntarily dismiss its claim of negligence *per se*.[2]

## BACKGROUND

In 2000, the Forest Service and Western Radio entered into a lease under which the Forest Service authorized Western Radio to use a specific parcel of land on Walker Mountain for constructing, operating, and maintaining a communications facility. Dkt. 95-1 ("lease"). In September 2004, Western Radio submitted a special use application to expand the size of its building on Walker Mountain and to install a generator with a greater capacity. Dkt. 95-2. On October 31, 2005, the Forest Supervisor for the Deschutes National Forest (at the time, Leslie Weldon) issued a decision memo approving Western Radio's application. Dkt. 95-3 ("2005 Decision Memo"). Under the heading "Decision To Be Implemented," the memo states, "I have decided to authorize the expansion of the Western Radio communication building." The memo then comments that neither an environmental assessment nor an environmental impact statement is required and that the project would not affect threatened or endangered species, wetlands, Native American religious or cultural sites, or other interests protected by law. *Id.*

In March 2006, in a one-page letter submitted by Richard Oberdorfer, Western Radio's owner and president, Western Radio proposed replacing its communications tower on Walker Mountain. Dkt. 95-4. Attached to the letter were a map of the Walker Mountain site with an arrow pointing to the location of the new tower, as well as the manufacturer's specifications for

---

[1] U.S. Cellular, which leases space on Western Radio's original tower, has intervened but did not participate in the pending motions for summary judgment.

[2] Docket numbers refer to the docket of the lead case, 3:11-cv-00638-SI.

the proposed new tower. *Id.*; Dkt. 110-1 at 3 (Oberdorfer Depo. 107:15). On September 18, 2007, the Forest Supervisor (then John Allen) issued another decision memo almost identical to the first. Dkt. 95-5 ("2007 Decision Memo"). The memo states, "I have decided to authorize the replacement of the Western Radio communication tower … on the Walker Mountain Communication Site" and again concludes that no environmental assessment or environmental impact statement would be needed. *Id.*

In December 2009, the District Ranger for Walker Mountain, Holly Jewkes, sent Mr. Oberdorfer a letter in which she acknowledged the 2007 Decision Memo "approving a tower replacement." Dkt. 95-6. Her letter continued, however, "[b]e advised that if Western is planning to pursue the tower replacement, I will require a new 30-day technical review period for all existing authorization holders at Walker Mountain including the Forest Service." She also stated, "[e]xecution of a Western communications use lease amendment to authorize the construction of a Western replacement tower would be, in part, contingent upon the results of this technical review period." *Id.* Mr. Oberdorfer did not respond to this letter.

In June 2010, Ms. Jewkes wrote again to Mr. Oberdorfer "to clarify the elements for Western Radio's proposed building and tower improvements as authorized by the October 2005, and September 2007 decision documents (respectively)." Dkt. 95-7. She explained that as long as Western Radio's project design still conformed to the descriptions in the decision memos, "no further NEPA analysis would be required." She also stated, "[b]e advised that Western Radio would need to submit a technical data form FS 2700-10, for 30-day comment to all existing authorized users on Walker Mountain, including the Forest Service. Execution of a communications use lease amendment, which authorizes construction, is contingent (in part) on

OPINION AND ORDER – Page 3

the results of this comment period." *Id.* Mr. Oberdorfer responded to this letter by email, stating that Western Radio was not changing the design for the new tower. Dkt. 95-8. The parties dispute whether Western Radio complied with Ms. Jewkes' request to provide the results of the technical review period.

Without informing the Forest Service, Western Radio began construction in August 2010 on its expanded facilities and new tower. Dkt. 110-1 at 6-7 (Oberdorfer Depo. 110, 113, 116). When the Forest Service became aware of the construction activity in October, Ms. Jewkes sent Oberdorfer an email stating, "[i]t has come to my attention that a new tower is being constructed at your facility at Walker. This activity has not been authorized. Construction must cease immediately." Dkt. 95-9. Although this email was sent on October 20, 2010, Mr. Oberdorfer states he did not see the email until October 21. Ms. Jewkes states that a Forest Service law enforcement officer posted a notice at the construction site on the afternoon of October 20, ordering that all construction stop. Jewkes Decl., Dkt. 97, at ¶ 6. Mr. Oberdorfer denies seeing that notice at the construction site on October 20. Oberdorfer Decl., Dkt. 106, at ¶ 12. The Forest Service also sent Western Radio a letter on October 21, demanding that all construction cease. Dkt. 95-11. The parties agree that construction continued until October 21. By that time, the replacement tower was largely completed; space had also been cleared and concrete poured to prepare for the expansion of Western Radio's building and generator. On October 21, Mr. Oberdorfer responded to Ms. Jewkes by email, referencing a telephone conversation that he had with Ms. Jewkes and stating that he had stopped construction at the site, even though he believed the construction had been authorized. Dkt. 95-10.

## DISCUSSION

## I. Summary Judgment Standard

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of plaintiff's positions [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

The parties dispute some facts, such as whether Western Radio halted construction as soon as it received notice from the Forest Service and whether Western Radio submitted all of the technical data requested by Ms. Jewkes. These facts, however, are not "material," and the court is able to resolve the parties' motions based solely on facts not in dispute.

## II. Forest Service's Motions for Summary Judgment

### A. Breach of Contract

The court agrees with the Forest Service that Western Radio breached two provisions of the parties' lease by not obtaining formal authorization for the new construction and by not submitting detailed construction plans before starting construction.

First, clause III.B of the lease requires Western Radio, as lessee, to "comply with applicable Federal, State, county, and municipal laws, regulations and standards for public health and safety, environmental protection, siting, construction, operation, and maintenance in exercising the rights granted by this lease." The applicable federal regulations regarding special use permits specify that "[a] holder shall file a new or amended application for a special use authorization to cover new, changed, or additional use[s] or area." 36 C.F.R. § 251.61(a). A "holder" is "any applicant who has received a special use authorization," and a lease, like that held by Western Radio, "is a type of special use authorization." *Id.* § 251.51. Further, "a special use authorization shall become effective when signed by both the applicant and the authorized officer." 36 C.F.R. § 251.62. In other words, § 251.61(a) requires Mr. Oberdorfer to file a new application for authorization if he wishes to modify his use of the site, and § 251.62 requires that authorization (like all special use authorizations) to be signed by both himself and the authorized officer before he can move forward. There is no special use authorization in the record, such as a lease amendment, signed by both the Forest Service and Western Radio that authorizes the construction of a new tower and expansion of Western Radio's other facilities.

Western Radio argues that it did not need a formal lease amendment because the original lease did not specify the improvements originally contemplated by the parties. The court reads § 251.61(a), however, as applying to any change of use from the parties' original understanding, regardless of whether that understanding was specified in the special use authorization.[3] This reading conforms to the plain meaning of § 251.61(a) and furthers the Forest Service's ability to

---

[3] To be clear, the Forest Service does not argue that Western Radio breached its lease by building facilities not specified in the lease itself. Rather, it argues that Western Radio breached its lease by not following the procedures enumerated in the lease and in federal regulations before commencing construction of new facilities.

OPINION AND ORDER – Page 6

oversee the use of Forest Service lands. The court therefore concludes that Western Radio was required to apply for authorization before constructing new facilities on Walker Mountain.

Further, any such authorization is not effective until signed by both the Forest Service and Western Radio, pursuant to § 251.62. Western Radio argues that the 2005 and 2007 Decision Memos provided the requisite authorization. The court agrees with the Forest Service, however, that these Decision Memos were only NEPA[4] documents, a necessary step in the approval process but not themselves the final authorizations to proceed with construction. The wording of the memos is not a model of clarity on that point. They state that the officers "authorize" Western Radio's proposals, and they do not expressly indicate that further steps are needed before construction may begin. The content of the Decision Memos, however, makes clear that the Decision Memos are concerned only with assessing the environmental consequences of the proposals. Further, as the Decision Memos are only signed by a Forest Service officer, they facially do not comply with the requirement of 36 C.F.R. § 251.62 that special use authorizations be counter-signed. Finally, even if good faith reliance on these Decision Memos were a possible defense to breach of contract, Ms. Jewkes' correspondence with Mr. Oberdorfer prior to the beginning of construction was sufficiently clear that these memos were only NEPA documents and that further authorization was required to make any continued reliance on the Decision Memos unreasonable.[5] In summary, because Western Radio did not comply with 36 C.F.R.

---

[4] The National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*

[5] For similar reasons, the court rejects Western Radio's argument that the Decision Memos modified the Walker Mountain site plan, thereby effectively modifying the lease as well and obviating any need for a formal lease amendment.

OPINION AND ORDER – Page 7

§§ 251.61 and 251.62 by obtaining effective authorization for its change in use of the leased land, it breached clause III.B of the parties' contract.

Second, by failing to submit detailed plans to the Forest Service in advance of construction, Western Radio breached clause III.A of its lease, both by its terms and by its incorporation of the 1982 site plan for Walker Mountain. Clause III.A of the lease requires that:

> All development, operation and maintenance of the authorized facility, improvements, and equipment located on the property shall be in accordance with stipulations in the communications site plan approved by the Authorized Officer. If required by the Authorized Officer, all plans for development, layout, construction, or alteration of improvements on the property as well as revisions of such plans, must be prepared by a licensed engineer, architect, and/or landscape architect. Such plans must be approved in writing by the Authorized Officer before commencement of any work.

At the time the lease was signed, the 1994 Walker Mountain site plan was in effect. That plan was attached to the lease to identify the location of the property leased to Western Radio and was also explicitly incorporated into the parties' agreement. The 1994 site plan was later withdrawn, and the parties agree that Walker Mountain is currently being operated under the 1982 plan. The court interprets clause III.A's reference to "the communications site plan approved by the Authorized Officer" as referring to the Walker Mountain site plan currently in effect at any given time. It thus holds that clause III.A incorporates the 1982 site plan into the parties' agreement.

The 1982 site plan, under "Construction Requirements," specifies that "[p]rior to construction the permittee will provide the Forest Service with a detailed site plan of the permit area showing the location of all the proposed facilities. … Detailed building plans prepared by a licensed engineer or architect must also be submitted for approval." Dkt. 109-16 (1982 site plan, clause VI.I.1). The site plan also requires that "[c]onstruction plans for any new development

OPINION AND ORDER – Page 8

shall bear the stamp of a licensed engineer or architect and must be approved by the Forest Service before construction can begin." *Id.* (clause V.A.5).

Western Radio did not submit building plans prepared by a licensed engineer or architect, and the Forest Service did not approve any such plans before the construction began. In the 2004 application, the only details provided by Western Radio were that it sought to increase the size of its building from 192 to 384 square feet and replace its "5kw generator" with a "20kw generator," with the new building being "16x24 feet" and the new generator being "3x5 feet." Dkt. 95-2. In its 2006 letter, Western Radio submitted one page of specifications from the manufacturer of the tower. Dkt. 95-4. Both proposals included a map of the Walker Mountain site with arrows indicating where the new or modified structures would be located. No other plans or specifications were included with the applications. Dkt. 110-1 at 3, 5 (Oberdorfer Depo. 107, 109). These descriptions were sufficient for the Forest Service to conduct its NEPA review and other preliminary assessments of the proposals but are insufficient to comply with the lease's and site plan's requirement of detailed construction plans prepared by a licensed engineer or architect. Western Radio's construction of the new tower and other improvements violated the parties' agreement because Western Radio did not submit to the Forest Service the requisite building plans, nor did the Forest Service approve those plans in writing or otherwise.

Western Radio argues that the lease specifies and limits the remedies that the Forest Service may seek under the contract, and that the Forest Service's failure to pursue those remedies constitutes a failure to exhaust administrative remedies. The lease describes the Forest Service's ability to seek revocation, termination, or suspension of the special use permit. The lease, however, does not limit the Forest Service to those remedies. To the contrary, the lease

OPINION AND ORDER – Page 9

empowers the Forest Service to recover "reasonable attorney's fees, in instituting, prosecuting, and/or defending any action or proceeding to enforce the United States rights" under the lease (clause IV.F). In other words, the lease affirmatively contemplates breach of contract actions such as the present one. Nonetheless, the court reserves ruling on precisely what remedies the Forest Service is entitled to receive in this action and whether clause V.B limits those remedies.

For these reasons, the court GRANTS the Forest Service's motion for summary judgment on its breach of contract claim with regard to the issue of liability.

### B.     Trespass

For purposes of summary judgment, the Forest Service argues that Western Radio's trespass was intentional, although it reserves its right to argue alternatively at trial that the trespass was negligent. "To prevail on an intentional trespass claim, there must be proof of an intentional invasion of a possessor's interest in the exclusive possession of land." *Hager v. Tire Recyclers, Inc.*, 136 Or. App. 439, 445, 901 P.2d 948, 952 (1995). "Intentional is used in this context to mean that the acts setting in motion the invasion were done with knowledge that a trespass would result and not that the acts were done for the specific purpose of causing a trespass or injury." *Lunda v. Matthews*, 46 Or. App. 701, 705, 613 P.2d 63, 66 (1980).

Consent is a defense to an action for trespass. *Verizon Nw., Inc. v. Main St. Dev., Inc.*, 693 F. Supp. 2d 1265, 1278 (D. Or. 2010). "Establishing consent requires evidence of 'actual willingness' on the part of the property owner to allow the trespasser to 'engage in the particular type of entry.'" *Id.* (citations omitted) (quoting *Colmus v. Sergeeva*, 175 Or. App. 131, 135, 27 P.3d 166 (2001)). When a permit holder exceeds the scope of the permit, he becomes a trespasser. *See United States v. Moore*, 2010 WL 373863 (D. Or. Jan. 28, 2010) (miners held to

OPINION AND ORDER – Page 10

be trespassers on Forest Service land where they used land for purposes other than mining and refused to submit the requisite plan of operations); *United States v. Tracy*, 2009 WL 3780936 (D. Or. Nov. 10, 2009), *aff'd* 401 F. App'x 224 (9th Cir. 2010) (miner held to be trespasser on Forest Service land when he proceeded with excavation without waiting for approval of his plan of operations); *see also Tracy*, 401 F. App'x at 225 ("Tracy failed to comply with Forest Service regulations governing his mining claim. He therefore had no right to possess the land and was a trespasser.").

Even if Western Radio properly pled consent as a defense, a question that the court does not decide, Western Radio acted in excess of that consent when it proceeded to clear land, pour concrete, and build a tower without waiting for formal authorization from the Forest Service. The requirement of formal authorization, signed by both parties, for any change in use of the site is spelled out in the regulations and incorporated in the parties' lease. Failure to obtain such authorization before proceeding exceeded the Forest Service's consent to use of the land and constitutes trespass. Further, the continuing presence of the new tower, which still has not been authorized, is a continuing trespass. Particularly given Ms. Jewkes' notice to Western Radio that further steps were required before construction could begin, this trespass was intentional. The court therefore GRANTS the Forest Service's motion for summary judgment on its trespass claim with regard to the issue of liability.

Western Radio argues that it is being singled out among the site's users for a technical oversight that could be remedied retrospectively. First, whether the Forest Service's conduct in prosecuting this claim is discriminatory or retaliatory against Western Radio and Mr. Oberdorfer is not legally relevant to Western Radio's liability for breach of contract or trespass. *Cf. Tracy*,

OPINION AND ORDER – Page 11

2009 WL 3780936, at *2 ("Even if the Forest Service's treatment of Tracy's proposed plan was unreasonable (which is not at issue here), Tracy has no right to mine without an approved plan of operations. While Tracy's frustration with the administrative process is understandable, it cannot justify his decision to take the law into his own hands.").[6]

Further, Western Radio's failure to obtain advance approval for its construction is not a mere technical mistake. In administering special use permits, the Forest Service is charged with protecting federal property and economic interests, managing the affected lands efficiently, protecting other lawful users of adjacent lands, and protecting the environment and the public interest in general. *See* 36 C.F.R. § 251.56(a)(1)(ii). The procedures at issue here are intended to ensure that the Forest Service has advance notice of all uses of Forest Service lands, which enables the Forest Service to modify or halt plans that could adversely affect the interests that the Forest Service is charged with protecting. *Cf. Tracy*, 2009 WL 3780936, at *2 ("[Permit holders] may not blithely ignore Forest Service regulations and argue afterward that their conduct was 'reasonable' …. The purpose of requiring prior approval is to resolve disputes concerning the statutory balance [of interests] *before* operations are begun, not after." (quoting *United States v. Doremus*, 888 F.2d 630, 632-33 (9th Cir. 1989)) (internal quotation marks omitted)).

## III.  Western Radio's Motion for Summary Judgment

For the same reasons that the court grants the Forest Service's motions for summary judgment on the breach of contract and trespass claims, the court DENIES Western Radio's motion for summary judgment on those claims. At oral argument, the Forest Service represented that it would voluntarily dismiss its negligence *per se* claim if its motion for summary judgment

---

[6] Mr. Oberdorfer's claim that the Forest Service's conduct violated his right to equal protection under a "class of one" theory has been dismissed by the court. *See* Dkt. 71.

OPINION AND ORDER – Page 12

on the trespass claim were granted. Having granted Plaintiff's motion for summary judgment on the trespass claim, the court grants Plaintiff's oral motion to dismiss its negligence *per se* claim. The court therefore DENIES Western Radio's motion for summary judgment on the negligence *per se* claim as moot.

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motions for summary judgment as to liability (Dkt. 94, 108), DENIES Defendant's motion for summary judgment (Dkt. 113), and GRANTS Plaintiff's oral motion to dismiss its claim of negligence *per se*. The court will set a supplemental briefing schedule on the question of remedy in a separate order.

Dated this 29th day of August, 2012.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge
