**Steven T. Lovett**, OSB No. 910701
stlovett@stoel.com
**Nathan C. Brunette**, OSB No. 090913
ncbrunette@stoel.com
**Crystal S. Chase**, OSB No. 093104
cschase@stoel.com
STOEL RIVES LLP
900 SW Fifth Avenue, Suite 2600
Portland, OR 97204
Telephone: (503) 224-3380
Facsimile: (503) 220-2480

Attorneys for Intervenor
United States Cellular Operating Company of Medford

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:11-cv-00638-SI (Lead Case) |
| Plaintiff, Counter Defendant, | Case No. 6:11-cv-06209-SI |
| v. | CONSOLIDATED CASES |
| WESTERN RADIO SERVICES CO., | **AMENDED COMPLAINT** |
| Defendant, Counter Claimant. | |
| UNITED STATES CELLULAR OPERATING COMPANY OF MEDFORD, | |
| Intervenor, | |
| v. | |
| WESTERN RADIO SERVICES CO., | |
| Defendant. | |

Page 1   -   AMENDED COMPLAINT

For its Amended Complaint against Western Radio Services Co. ("Western Radio") pursuant to Fed. R. Civ. P. 21(a)(1)(B), Intervenor United States Cellular Operating Company of Medford ("U.S. Cellular") hereby alleges:

### PARTIES

1.      On August 21, 2012, the Court granted U.S. Cellular leave to intervene as of right in this action to file this Complaint in Intervention.

2.      Intervenor U.S. Cellular is an Oregon corporation with its principal place of business in Chicago, Illinois.

3.      Defendant Western Radio is an Oregon corporation with its principal place of business in Bend, Oregon.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331. In the alternative, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over U.S. Cellular's claims, which arise from a common nucleus of operative fact and are part of the same case or controversy as the United States of America's ("Government") claims against Western Radio in this action.

5.      Pursuant to 28 U.S.C. § 1391, venue is proper in the District of Oregon because Western Radio is a resident of Oregon, a substantial part of the events or omissions giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District.

6.      This Court has personal jurisdiction over Western Radio because Western Radio is an Oregon corporation with its principal place of business in Oregon, has engaged in

Page 2   -   AMENDED COMPLAINT

substantial business transactions in Oregon, and has previously invoked this Court's jurisdiction in this action by filing its now-dismissed Counterclaims.

## BACKGROUND

7.      U.S. Cellular, together with its parent company United States Cellular Corporation and related companies, is a cellular telephone service provider that depends on the constant operation of its cellular telephone network and related communications relays, including microwave communications relays.  U.S. Cellular is the successor in interest to Oregon RSA #6, Inc. ("Oregon RSA #6").

8.      Effective on or about March 1, 1993, Oregon RSA #6 entered into a "Facilities Space Lease" to obtain the rights to place cellular telephone and related microwave communications antennas and equipment ("Equipment") on a tower owned by Western Radio (the "Original Tower") and in an adjacent support building (collectively, the "leased premises") located at Walker Mountain in the Deschutes National Forest in Oregon ("Walker Mountain site").  A copy of the 1993 Facilities Space Lease is attached hereto as **Exhibit 1**.

9.      The purpose of the 1993 Facilities Space Lease, as articulated in the Recitals and in Section 5 of the Lease, is to grant a lease to Oregon RSA #6 for use of the Original Tower "as a cellular mobile telephone base station."

10.      The Walker Mountain site is owned by the Government and leased to Western Radio pursuant to a 2000 Lease ("Government Lease").  The 1993 Facilities Space Lease refers to the arrangement between the Government and Western Radio granting Western Radio the right to occupy the Walker Mountain site as "the Forest Service Permit."  On information and belief, the Government Lease succeeded the Forest Service Permit.

11.     Under Section 25 of the 1993 Facilities Space Lease, Western Radio "covenants that [U.S. Cellular] shall have quite [sic] and peaceable possession" of the leased premises. Section 25 further creates an affirmative obligation on Western Radio to refrain from defaulting or terminating its arrangement with the Government relating to the Walker Mountain site.

12.     Although the 1993 Facilities Space Lease expired on or about December 31, 1998, Oregon RSA #6 (and U.S. Cellular, as the successor in interest to Oregon RSA #6) and Western Radio continued to uphold the terms of the 1993 Facilities Space Lease.

13.     Effective on or about May 31, 2005, U.S. Cellular and Western Radio entered into an "Addendum to Facilities Space Lease dated March 1, 1993" ("2005 Addendum") reaffirming the material terms of the 1993 Facilities Space Lease without any changes except for a change in the duration of the lease term.  A copy of the 2005 Addendum is attached hereto as **Exhibit 2**.

14.     Effective on or about November 17, 2009, U.S. Cellular and Western Radio entered into a "First Amendment to Facilities Space Lease" ("2009 First Amendment").  A copy of the 2009 First Amendment is attached hereto as **Exhibit 3**.  Hereafter, the 1993 Facilities Space Lease, the 2005 Addendum, and the 2009 First Amendment shall collectively be referred to as the "Amended Facilities Space Lease."

15.     The 2009 First Amendment amended the lease term.  It also contains a recital stating that Western Radio plans to replace the Original Tower with a new substitute tower on the Walker Mountain site ("New Tower").  The 2009 First Amendment also adds Section 32 to the Amended Facilities Space Lease.  In Section 32, U.S. Cellular covenants to "cooperate with [Western Radio] in the removal of [U.S. Cellular's] antenna and their replacement . . . upon any such substitute tower following its construction."

Page 4   -    AMENDED COMPLAINT

16.    U.S. Cellular currently has its Equipment in place at the Walker Mountain site. U.S. Cellular, and its related companies, relies on the continuous operation of its Equipment to keep its cellular telephone network and signal on the air for its cellular telephone subscribers.

17.    On or about May 26, 2011, the Government brought this action against Western Radio. The Government's First Amended Complaint, filed February 2, 2012, contains claims for breach of the Government Lease, negligence *per se*, and trespass. The Government alleges that Western Radio breached the material terms of the Government Lease by beginning construction on the New Tower, placing its equipment on the New Tower, and making improvements to the adjacent support building without authorization or approval from the Government. The First Amended Complaint seeks the following relief: (1) termination of the Government Lease or ordered compliance with its terms, (2) removal of the Original Tower, (3) removal of the New Tower and all equipment on the New Tower, (4) removal of all equipment from the adjacent support building, (5) removal of a recently constructed generator pad, and (6) monetary damages.

18.    On May 23, 2012, the Government moved for summary judgment on its trespass claim. In its summary judgment motion, the Government seeks an order either (i) directing Western Radio to remove the New Tower and the recently constructed improvements within 14 days or (ii) determining that the Government is entitled to costs and expenses incurred for removing the same, and enjoining Western Radio from constructing or expanding any new structures at the Walker Mountain site without lawful authorization.

19.    On June 29, 2012, the Government moved for summary judgment on its breach of contract claim, seeking an order directing Western Radio to remove the New Tower and the recently constructed improvements, and to restore the Original Tower and the adjacent support

Page 5    -    AMENDED COMPLAINT

building to their previous condition, or in the alternative, an order for money damages in the amount necessary for the Government to do the same.

20.    On June 30, 2012, Western Radio moved for summary judgment on all three of the Government's claims.

21.    On August 29, 2012, this Court granted in part the Government's motion for summary judgment as to its first claim for breach of the Government Lease and its third claim for intentional trespass, holding, *inter alia*, that the New Tower was an intentional trespass and that its maintenance was a continuing trespass because it "still has not been authorized." The Court dismissed the Government's second claim for negligence *per se*. The Court did not decide the appropriate remedy on the Government's first and third claims.

22.    On or about May 22, 2012 and May 23, 2012, the Government assured U.S. Cellular that, should the Government require removal of the Original Tower or the New Tower as a result of the action between the Government and Western Radio, the Government would provide U.S. Cellular sufficient lead time to find an alternative location for its Equipment and to move the Equipment from the Walker Mountain site so as to avoid disruption of U.S. Cellular's cellular telephone service in the nearby area. Neither of the Government's motions for summary judgment sought removal of the Original Tower or of U.S. Cellular's Equipment located on the Original Tower, nor has the Government's remedies briefing requested removal of the Original Tower.

23.    On July 24, 2012, Richard L. Oberdorfer, on behalf of Western Radio, sent a letter to U.S. Cellular demanding that U.S. Cellular remove the Equipment from the Original Tower pursuant to the 2009 First Amendment ("Demand Letter"). The Demand Letter claimed

Page 6    -    AMENDED COMPLAINT

that U.S. Cellular had defaulted on its obligations by failing to cooperate regarding transfer of its Equipment to the New Tower. A copy of the Demand Letter is attached hereto as **Exhibit 4**.

24.     In the Demand Letter, Western Radio states that "[i]f U.S. Cellular fails to cure the default within 30 days, Western [Radio] will exercise its remedies under section 18 of the [1993 Facilities Space Lease]." Section 18 of the Amended Facilities Space Lease provides that if U.S. Cellular fails to comply with any provision within 30 days of written notice from Western Radio of U.S. Cellular's failure to comply, U.S. Cellular will be in default and Western Radio's remedies will include termination of the Amended Facilities Space Lease, the ability to remove U.S. Cellular's Equipment from the leased premises at U.S. Cellular's expense, and acceleration of all rental payments due.  In effect, Western Radio via the Demand Letter threatens to terminate the Amended Facilities Space Lease, engage in self-help to remove U.S. Cellular's Equipment from the Original Tower, and/or accelerate all rent payments due under the Amended Facilities Space Lease.

25.     On July 31, 2012, counsel for U.S. Cellular telephoned counsel for Western Radio to discuss the Demand Letter and left a voicemail. On August 1, 2012, counsel for Western Radio returned that telephone call. In that telephone conversation, counsel for U.S. Cellular requested that Western Radio withdraw its Demand Letter in light of the litigation between the Government and Western Radio. Counsel for Western Radio stated she would confer with her client on the matter.

26.     On August 2, 2012, the Government sent a letter to Western Radio stating that neither Western Radio nor its tenants (which include U.S. Cellular) are authorized to place any additional equipment on the New Tower ("Enforcement Letter"). The Enforcement Letter states that any additional activity on the New Tower, including installation of additional equipment, "is

Page 7   -    AMENDED COMPLAINT

in violation of the Western Radio lease as well as federal laws, both civil and criminal," and that "the United States will enforce all appropriate laws if there is any additional activity undertaken [on the New Tower] without express authorization from the Forest Service or a Court Order." A copy of the Enforcement Letter is attached as **Exhibit 5**.

27.    Not having received a response from counsel for Western Radio, on August 15, 2012, counsel for U.S. Cellular sent a letter to counsel for Western Radio, again requesting that Western Radio withdraw its Demand Letter pending resolution of the motions for summary judgment described in paragraphs 18 to 20 of this Complaint ("Withdrawal Request Letter"). The Withdrawal Request Letter stated that the claimed notice of default in the Demand Letter was flawed because Western Radio may not have the lawful right to erect the New Tower or to cause placement of equipment on the New Tower. A copy of the Withdrawal Request Letter is attached as **Exhibit 6**.

28.    On August 15, 2012, counsel for Western Radio responded via email to the Withdrawal Request Letter and indicated Western Radio would not withdraw the Demand Letter, and that Western Radio planned to remove the Original Tower "to reduce litigation expense" ("Original Tower Removal Email"). A copy of the Original Tower Removal Email is attached as **Exhibit 7**.

29.    Subsequent to the events described in paragraphs 23 to 28 of this Complaint, Western Radio has repeatedly stated that it believes that U.S. Cellular is in breach of the Amended Facilities Space Lease and that, unless restrained by the Court, Western Radio intends to remove the Original Tower and U.S. Cellular's Equipment located on the Original Tower.

Page 8    -    AMENDED COMPLAINT

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment – Against Western Radio)

30.    U.S. Cellular repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

31.    An actual, justiciable controversy exists between U.S. Cellular and Western Radio. Western Radio contends that U.S. Cellular's Equipment may not remain on Western Radio's Original Tower at the Walker Mountain site pursuant to the Amended Facility Space Lease, and demands that U.S. Cellular immediately remove the Equipment to facilitate removal of the Original Tower, regardless of whether U.S. Cellular is lawfully allowed to place such Equipment on the New Tower. U.S. Cellular contends that Western Radio's demands are inconsistent with the terms of the Amended Facility Space Lease and, in light of the present circumstances described in this Complaint, that Western Radio's demands breach its obligations under the Amended Facility Space Lease.

32.    Western Radio's demand that U.S. Cellular remove its Equipment from the Original Tower at the Walker Mountain site is inconsistent with the terms of the 2009 First Amendment, which only requires U.S. Cellular to cooperate in moving Equipment to the New Tower at the Walker Mountain site upon completion of a substitute tower—*i.e.*, a tower that Western Radio has constructed lawfully and occupies lawfully.

33.    Western Radio's demand that U.S. Cellular remove its Equipment from the Original Tower is inconsistent with the Amended Facility Space Lease in the present circumstances, including the Government's refusal to allow U.S. Cellular to install its Equipment on the New Tower. If Western Radio removes the Original Tower, or engages in the self-help measures threatened in the Demand Letter, Western Radio will have breached its obligation

Page 9    -    AMENDED COMPLAINT

under Section 25 of the Amended Facility Space Lease to provide quiet enjoyment of the leased premises, including the Original Tower. Those actions would also cause the Amended Facility Space Lease to fail its essential purpose of providing U.S. Cellular with leased space in which it can operate its Equipment in order to provide cellular telephone service to nearby areas.

34.     Unless Western Radio is restrained and enjoined, its proposed course of conduct, including engaging in self-help measures to remove U.S. Cellular's Equipment from the Original Tower and destruction of the Original Tower, will cause irreparable harm to U.S. Cellular because U.S. Cellular is prohibited from relocating its Equipment to the New Tower as anticipated by the 2009 First Amendment. As a result, U.S. Cellular will not be able to keep its cellular telephone network and signal on the air for its cellular telephone customers, depriving those customers of service in nearby areas. U.S. Cellular has no adequate remedy at law.

35.     The Court should declare that:

   a.  Western Radio's demand that U.S. Cellular remove its Equipment from the Original Tower despite the Government's prohibition on relocating that Equipment to the New Tower violates Western Radio's obligations pursuant to the Amended Facilities Space Lease; and

   b.  U.S. Cellular has the right under the Amended Facilities Space Lease to maintain its Equipment on the Original Tower unless and until such time as the Government either withdraws its objection to the placement of additional equipment on the New Tower or requires the removal of the Equipment from the Original Tower.

36.     The Court should restrain and enjoin Western Radio; its officers, agents, employees, directors, shareholders, or attorneys; or any person acting in concert with any of

them from taking any further action threatened in the Demand Letter, or any other action that indirectly or directly causes the removal of U.S. Cellular's Equipment from its current position at the Walker Mountain site, and from otherwise interfering with U.S. Cellular's quiet enjoyment of the leased premises under the Amended Facilities Space Lease unless and until the Government's claims against Western Radio are fully resolved.

37.    Pursuant to Section 30 of the Amended Facilities Space Lease, U.S. Cellular is entitled to its attorneys' fees in this action.

## SECOND CLAIM FOR RELIEF

### (Anticipatory Repudiation / Breach of Contract – Against Western Radio)

38.    U.S. Cellular repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

39.    The Amended Facilities Space Lease is a valid contract between U.S. Cellular and Western Radio.

40.    U.S. Cellular is ready, willing, and able to perform its obligations under the Amended Facilities Space Lease, has consistently performed its obligations under the Amended Facilities Space Lease, and has not materially or otherwise breached the Amended Facilities Space Lease.

41.    U.S. Cellular has the right under the Amended Facilities Space Lease to maintain its Equipment on the Original Tower unless and until such time as the Government either withdraws its objection to the placement of additional equipment on the New Tower or requires the removal of the Equipment from the Original Tower.

42.    In issuing the Demand Letter and by its subsequent voluntary and affirmative actions and statements alleged in the foregoing paragraphs, Western Radio has objectively

Page 11  -    AMENDED COMPLAINT

manifested a clear and unambiguous intent not to perform its obligations under the Amended

Facilities Space Lease, including its obligation to provide U.S. Cellular quiet enjoyment of the

leased premises.

43.    The voluntary and affirmative actions and statements described in the preceding

paragraph, including Western Radio's demand that U.S. Cellular remove its Equipment from the

Original Tower despite the Government's prohibition on relocating that Equipment to the New

Tower violate Western Radio's obligations pursuant to the Amended Facilities Space Lease and

are an anticipatory repudiation and/or breach of the Amended Facilities Space Lease.

44.    U.S. Cellular has suffered and will continue to suffer damages as a direct result of

Western Radio's actions described in the foregoing paragraphs.  U.S. Cellular has no adequate

remedy at law and will suffer irreparable harm, including harm to its business operations,

customer relationships, and goodwill, if Western Radio removes U.S. Cellular's Equipment from

the Original Tower.

45.    The Court should compel Western Radio to specifically perform its obligations

under the Amended Facilities Space Lease.

46.    Western Radio has an obligation to refrain from taking any further action

threatened in the Demand Letter, or any other action that indirectly or directly causes the

removal of U.S. Cellular's Equipment from its current position at the Walker Mountain site, and

from otherwise interfering with U.S. Cellular's quiet enjoyment of the leased premises under the

Amended Facilities Space Lease.

47.    The Court should restrain and enjoin Western Radio; its officers, agents,

employees, directors, shareholders, or attorneys; or any person acting in concert with any of

them from taking any further action threatened in the Demand Letter, or any other action that

Page 12  -    AMENDED COMPLAINT

indirectly or directly causes the removal of U.S. Cellular's Equipment from its current position at the Walker Mountain site, and from otherwise interfering with U.S. Cellular's quiet enjoyment of the leased premises under the Amended Facilities Space Lease unless and until the Government's claims against Western Radio are fully resolved.

48.    Pursuant to Section 30 of the Amended Facilities Space Lease, U.S. Cellular is entitled to its attorneys' fees in this action.

## PRAYER FOR RELIEF

WHEREFORE, U.S. Cellular requests that the Court:

A.    Enter a declaratory judgment declaring that:

    i.    Western Radio's demand that U.S. Cellular remove its Equipment from the Original Tower despite the Government's prohibition on relocating that Equipment to the New Tower violates Western Radio's obligations pursuant to the Amended Facilities Space Lease;

    ii.    Western Radio's demand that U.S. Cellular remove its Equipment from the Original Tower despite the Government's prohibition on relocating that Equipment to the New Tower is an anticipatory repudiation and/or a breach of Western Radio's obligations under the Amended Facilities Space Lease; and

    iii.    U.S. Cellular has the right under the Amended Facilities Space Lease to maintain its Equipment on the Original Tower unless and until such time as the Government either withdraws its objection to the placement of additional equipment on the New Tower or requires the removal of the Equipment from the Original Tower;

B.      Enjoin Western Radio; its officers, agents, employees, directors, or shareholders, attorneys; or any persons acting in active concert or participation with any of them from:

   i.      Declaring U.S. Cellular in breach of the Amended Facilities Space Lease due to U.S. Cellular's refusal to remove its Equipment from the Original Tower;

   ii.      Taking any action that is intended to or actually does directly or indirectly cause the removal of U.S. Cellular's Equipment from its current position at the Walker Mountain site, including but not limited to (a) terminating the Amended Facilities Space Lease or directly or indirectly threatening to do so; (b) removing or causing any person to remove U.S. Cellular's Equipment from its current position at the Walker Mountain site or threatening to do so; and (c) accelerating the balance of rent owed under the Amended Facilities Space Lease or threatening to do so; and

   iii.      Otherwise interfering with U.S. Cellular's quiet enjoyment of the leased premises under the Amended Facilities Space Lease;

C.      Compel Western Radio to specifically perform its obligations under the Amended Facilities Space Lease;

D.      Award U.S. Cellular its costs in this action and its attorneys' fees; and

E.      Award U.S. Cellular such other and further relief as to which it may be entitled.

Page 14  -      AMENDED COMPLAINT

DATED:  September 25, 2012.

STOEL RIVES LLP


s/ Nathan C. Brunette
STEVEN T. LOVETT
OSB No. 910701
NATHAN C. BRUNETTE
OSB No. 090913
CRYSTAL S. CHASE
OSB No. 093104
Telephone:  (503) 224-3380

Attorneys for Intervenor
United States Cellular Operating Company of
Medford

Page 15  -    AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

hereby certify that I served the foregoing **AMENDED COMPLAINT** on the following

named persons on the date indicated below by

☐   mailing with postage prepaid

☐   hand delivery

☐   facsimile transmission

☐   overnight delivery

☐   email

☒   notice of electronic filing using the Cm/ECF system

to said persons a true copy thereof, contained in a sealed envelope, addressed to said persons at

his or her last-known addresses indicated below.

Neil J. Evans
Sean E. Martin
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

      Attorneys for Plaintiff United States of America

Marianne G. Dugan
Attorney at Law
259 E 5th Avenue, Suite 200-D
Eugene, OR  97401

      Attorney for Defendant Western Radio Services Co.

Page 1   -   CERTIFICATE OF SERVICE

DATED:  September 25, 2012.

STOEL RIVES LLP


s/ Nathan C. Brunette
NATHAN C. BRUNETTE
OSB No. 090913
Telephone:  (503) 224-3380

Attorneys for Intervenor
United States Cellular Operating Company
    of Medford

Page 2    -    CERTIFICATE OF SERVICE

**FACILITIES SPACE LEASE**



This Lease is made and entered into the <u>1st</u> day of <u>March</u>, 1993, by and between WESTERN RADIO SERVICES CO., INC., an Oregon corporation, 114 NE Penn Avenue, Bend, Oregon 97701 ("Lessor") and OREGON RSA #6, INC., an Oregon corporation, c/o U.S. Cellular, Real Estate Department, (8410) West Bryn Mawr Avenue, Suite 700, Chicago, Illinois 60631 ("Lessee").

WHEREAS, Lessor owns and maintains an 80-foot freestanding communications tower (the "Tower") and facilities building (the "Building") located upon a parcel of land (the "Site") at a community antenna farm upon the geological feature known as "Walker Mountain" near Crescent, Klamath County, Oregon, that Lessor occupies pursuant to a Special Use Permit issued by the U.S. Department of Agriculture, Forest Service (the "Forest Service Permit"); and

WHEREAS, Lessee desires to lease space upon the Tower and space inside the Building for Lessee's cellular mobile radio telephone operations;

NOW, THEREFORE, in consideration of the mutual promises, conditions and other good and valuable consideration of the parties hereto, it is covenanted and agreed as follows:

1.  <u>Demise of Premises</u>. Lessor hereby lets and demises unto Lessee, and Lessee hereby receives and accepts from Lessor, the following described Premises:

Page 1 - FACILITIES SPACE LEASE

a.   Attachment locations upon the Tower for the placement and affixing of two (2) microwave dish antennas and two (2) Ommi Cellular antennas, of such type and sizes, and at such heights, as shall be in accordance with Lessee's needs, subject to the structural limitations of the Tower and existing mounts thereupon (all of Lessee's attachment locations being collectively referred to herein as the "Tower Space"); and

b.   Approximately one hundred (100) square feet of floor space in the Building (the "Building Space") for the placement and affixing of Lessee's microwave equipment ("Lessee's Equipment).

2.   Privileges.  During the term hereof Lessor hereby confers upon Lessee the following irrevocable privileges appurtenant to this Lease, subject to Lessor's authority to confer the same:

a.   To Place and affix transmission lines and install a transmission line bridge between Lessee's Equipment and the Tower Space;

b.   To place and affix power and telephone lines between Lessee's Equipment and suitable utility service points;

c.   To traverse other portions of the Building and the Site reasonably necessary to accomplish Lessee's purposes as contemplated herein.  Lessee shall not interfere with Lessor's use of the Building or its equipment; and

Page 2 - FACILITIES SPACE LEASE

d.   Lessee shall at all times be subject to and comply with all applicable governmental rules and regulations and the provisions of the Forest Service Permit.

3.   <u>Common Room</u>.  It is understood and agreed that the Building Space is part of a common room which Lessor and Lessee shall share inside the Building, and that any floor area not actually occupied by the equipment of their respective operations shall be mutually available for passage and other reasonable and temporary use and convenience, provided that the same does not result in interference of any kind or nature.

4.   <u>Security</u>.  In as much as the operations of both Lessor and Lessee are common carrier in scope, serving the general public and requiring a high level of privacy and reliability, Lessor and Lessee hereby covenant and agree that only authorized personnel shall be given means to gain entrance to the Building. No other persons shall be admitted to the Building except in furtherance of a specific business purpose under the close supervision of authorized personnel which avoids physical contact with the operating equipment of the other party.  "Authorized personnel" is hereby defined to mean any person engaged as an employee of either party hereto in the capacity of an engineer or technician who has been identified as such to the other party, and shall include Lessor acting under service contract with Lessee.

5.   <u>Use of Premises</u>.  Subject to all of the covenants, conditions, and provisions of, and Lessee's strict compliance with the above referenced Forest Service Permit, Lessee shall be

Page 3 - FACILITIES SPACE LEASE

entitled to use the Premises as a cellular mobile telephone base station. Lessor shall have the right of technical review and approval of placement of Lessee's devices and equipment, method of installation, physical appearance, and all other matters which Lessor deems, in Lessor's reasonable opinion, to affect Lessor's own operations or interests.

      6.  <u>Compliance with Law</u>. Lessee agrees to comply with all applicable laws and regulations, and to obtain and keep in force all permits and authorizations required for its work and operations.

      7.  <u>Initial Term</u>. The initial term of this Lease shall commence on the date hereof and shall expire on the 31st day of December, 1999, when the Forest Service Permit authorizing Lessor's use of the Site is scheduled to terminate. The parties acknowledge that the term of this Lease is subject to termination prior to the date set forth above if, for any reason, the Forest Service Permit is terminated prior to that date.

      8.  <u>Basic Rent</u>. Lessee shall pay rent to Lessor in the amount of Seven Hundred Fifty Dollars ($750.00) per month, which shall be payable in advance on the first day of each calendar month. The first payment of rent shall be prorated among the number of days in the first month of Lessee's occupance, and abated as to the number of days which have elapsed prior to Lessee's taking possession of the Premises by commencing work to install Lessee's Equipment. Notwithstanding the foregoing, rent shall start no later than the 1st day of June, 1993.

Page 4 - FACILITIES SPACE LEASE

USCELLULAR000034

Exhibit 1
Page 4 of 11

9.   **Adjusted Rent**.  On the first day of March, 1993, and on the first day of March every second year thereafter during the term of this Lease, as the same is renewed or extended, the basic rent shall be increased by eight percent (8%) of the amount of rent which was paid prior to such adjustment.

10.  **Additional Rent**.  In addition to the basic rent required to be paid pursuant to paragraph 8 above, Lessee shall pay as additional rent that portion of the annual Forest Service Permit fee that is allocable to that portion of the Site that is occupied and used by Lessee and Lessee's proportionate share of any new or increased charges associated with the use of the Site or the consumption of commercial electrical power thereon.

11.  **Utilities**.  Lessee's electric utility service shall be deemed included in the rent, and Lessor shall provide all commercial electric power required for Lessee's operations upon the Premises at no charge to lessee, except as may otherwise be provided for in this Lease or permissibly passed through to Lessee as increases in rent as allowed in paragraph 10 above.  Lessee shall be solely and independently responsible of the cost of providing telephone utility services to the Premises required for Lessee's operations, and for the separate metering, billing and payment for telephone utility services actually used in connection therewith.

12.  **Taxes**.  Lessor shall pay all property taxes levied against the Tower, the Building, Lessor's other improvements and equipment, and Lessor's leasehold estate in the Site land.  Lessee

Page 5 - FACILITIES SPACE LEASE

USCELLULAR000035

Exhibit 1
Page 5 of 11

shall pay all property taxes, if any, levied against Lessee's Equipment.

13. Facility Upgrades. Lessee shall be entitled, at Lessee's sole expense, to upgrade certain features Lessor's facility, and to make such modifications as Lessee considers to be necessary or desirable, including but not limited to environmental controls and grounding, subject to lessor's review, approval of and prior written consent to the work to be performed.

Lessee will furnish, at its own expense, dual polarized antennas in the 2 ghz band for the path between Sugar Pine Butte and Walker Mountain. Lessor will use the horizontal feed and Lessee the vertical feed.

14. Tower Climbing. All Tower work done on Lessee's behalf shall be performed at Lessee's sole expense by Lessor or Lessor's employees or agents.

15. Grounding. Lessor and Lessee shall each connect their equipment to a shared grounding field which ensures that zero electrical difference in potential between their respective communications systems will be maintained.

16. RF Interference. Lessee agrees to fully and adequately protect Lessor's operations from radio frequency interference caused by Lessee's operations, and Lessee shall at all times be subject to radio frequency interference caused by Lessor's operations; provided, however, that Lessor and Lessee mutually covenant and agree to use their best efforts to cooperatively

Page 6 - FACILITIES SPACE LEASE

reduce, minimize, and eliminate any radio frequency interference caused to or by their respective operations.

17. **Mutual Indemnification**. Lessee shall indemnify and hold Lessor harmless from any loss, damage, or injury caused by, or on behalf of, or at the fault of Lessee. Lessor shall indemnify and hold Lessee harmless from any loss, damage, or injury caused by, or on behalf of, or at the fault of Lessor. Nothing in this Article shall require a party to indemnify the other party against such other party's own willful or negligent actions.

18. **Defaults**. Time is of the essence. Lessee shall be in default of this Lease immediately if Lessee fails to make any payments of rent or other charges to Lessor or third parties when due. Lessee shall be in default of this Lease if Lessee fails to comply with any other provision thereof within thirty (30) days of Lessor's written notice that such failure to comply has occurred. Upon default Lessor shall have the following remedies which shall be cumulative and non-exclusive:

    a.  To terminate this Lease;

    b.  To remove Lessee's equipment from the Premises at Lessee's sole expense;

    c.  To accelerate the entire balance of the rent reserved under this Lease for its entire term whether or not such rent has become due under the terms hereof;

    d.  All other remedies at law or equity.

19. **Destruction of Premises**. In the event that all or any portion of the Premises is destroyed or substantially damaged

Page 7 - FACILITIES SPACE LEASE

USCELLULAR000037

Exhibit 1
Page 7 of 11

by casualty, rent shall immediately abate, and either Lessor or Lessee may terminate this Lease without cost or penalty by giving written notice to the other party within thirty (30) days of the event of casualty. If neither party gives such notice, then Lessor shall promptly undertake all necessary work to repair and restore the Premises, subject to receiving landowner approval therefor, and upon restoration Lessee shall re-occupy the Premises and rent shall immediately recommence. Under no circumstances shall Lessor be liable to Lessee for any damage to, or cost of restoring, Lessee's Equipment as the result of any event of casualty.

20. **Assignments.** Lessee shall not assign this Lease without the prior written consent of Lessor. Lessor hereby covenants that Lessor's consent to such assignment shall not be unreasonably withheld.

21. **Subleasing.** Lessee shall not sublet the Premises or any portion thereof to third parties.

22. **Lessee's Personal Property.** Lessor hereby agrees that Lessee's Equipment is and shall remain Lessee's personal property, and that the same shall never be considered fixtures to Lessor's realty. Lessee shall at all times be authorized to remove Lessee's Equipment from the Premises, provided that such removal is accomplished without damage to Lessor's improvements and in accordance with Lessor's management control of the facility. In the event of any damage, Lessee shall immediately upon demand reimburse Lessor for the repair costs thereof.

Page 8 - FACILITIES SPACE LEASE

USCELLULAR000038

Exhibit 1
Page 8 of 11

23.  <u>Execution of Other Instruments</u>.  Lessor agrees to execute, acknowledge, and deliver to Lessee other instruments respecting the Premises, such as a Memorandum of Lease in recordable form, a Landlord's Consent to Lessee giving a leasehold mortgage, and such other instruments as Lessee or Lessee's lender may reasonably request from time to time.

24.  <u>Estoppel Certificate</u>.  Upon request, Lessee shall execute a certificate stating that:

a.  The Lease has been properly executed and delivered by Lessee; is valid and binding upon Lessee, has not been modified, and is in full force and effect;

b.  There exist no defaults under the terms of the Lease by Lessor or Lessee;

c.  Lessee has not paid any rental to Lessor more than one month in advance and Lessor holds no security deposit for Lessee;

d.  Lessee has no defense, claim of lien or offset, under the Lease or against the rental payable thereunder; and

e.  Lessee has no claims to or interest in the premises, legal or equitable, or any contract or option therefor, other than as a Lessee under the Lease.

25.  <u>Subordination</u>.  This Lease is subject and subordinate to the lien of the Forest Service Permit and all existing and future mortgages, deeds of trust, liens, and refinancings and extensions thereof which Lessor may make against the Tower, the Building, Lessor's other improvements and equipment, and Lessor's

Page 9 - FACILITIES SPACE LEASE

USCELLULAR000039

Exhibit 1
Page 9 of 11

leasehold estate in the Site, provided that the holders of such mortgages or security interests specifically agree in writing to recognize this Lease and that Lessee may quietly enjoy the Premises under this Lease so long as Lessee is not in default hereof.

25. <u>Quiet Enjoyment</u>. Lessor covenants that Lessee shall have quite and peaceable possession of the Premises throughout the Lease term as the same is renewed and extended, and that Lessor shall not default under the Forest Service Permit or intentionally terminate the same.

26. <u>Successors</u>. This Lease and all of the provisions, covenants, and conditions hereof shall inure to the benefit of and be binding upon the parties hereto and their respective successors in interest, to the extent such successors may be allowed.

27. <u>Entire Agreement</u>. This Lease constitutes the entire agreement between the parties and supersedes any prior understandings or oral or written agreements between the parties respecting the within subject matter.

28. <u>Amendments</u>. This Lease may not be modified, amended, or terminated, except as provided herein or by other written agreement between the parties.

29. <u>Governing Law/Venue</u>. This Lease shall be governed by and construed in accordance with the laws of Oregon. In the event of any suit or action instituted hereon, venue of such proceedings shall be exclusively in the appropriate court in Deschutes County, Oregon.

Page 10 - FACILITIES SPACE LEASE

30.  **Attorney's Fees**.  If suit or action is instituted in connection with any controversy arising out of this Lease, the prevailing party shall be entitled to recover, in addition to costs, such sum as the Court may adjudge reasonable as attorney fees in said suit or action or appeal therefrom.

IN WITNESS WHEREOF, the parties hereto bind themselves to this Lease as of the day and year first above written.

LESSOR:

WESTERN RADIO SERVICES CO., INC., an Oregon corporation

By: _____
Richard Oberdorfer,
President

LESSEE:

OREGON RSA #6, INC.,
an Oregon corporation

By: _____
H. Donald Nelson,
President

STATE OF OREGON      )
                     ) ss:
County of Deschutes  )

The foregoing instrument was acknowledged before me this 24th day of November, 1992, by RICHARD OBERDORFER, President of Western Radio Services Co., Inc, an Oregon corporation, on behalf of the corporation.

_____
Notary Public
My Commission expires: 1/26/96

STATE OF ILLINOIS   )
                    ) ss:
County of COOK      )

The foregoing instrument was acknowledged before me this 5th day of March, 1993, by H. DONALD NELSON, President of OREGON RSA #6, INC., an Oregon corporation, on behalf of the corporation.

"OFFICIAL SEAL"
DAVID M. BRIGGS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/24/94

David M. Briggs
Notary Public
My Commission expires: 12/24/94

Page 11 - FACILITIES SPACE LEASE

USCELLULAR000041

Exhibit 1
Page 11 of 11

**ADDENDUM to Facilities Space Lease dated March 1, 1993**

THIS ADDENDUM, made the *31 st* day of *May*, 20*05* modifies that certain *Facilities Space Lease* (the "Lease") dated March 1, 1993, by and between **Western Radio Services Co.**, ("Landlord") an Oregon Corporation and **United States Cellular Operating Company of Medford**, an Oregon corporation, as successor in interest to Oregon RSA #6, Attention: Real Estate Department, 8410 West Bryn Mawr Avenue, Suite 700, Chicago, Illinois 60631 ("Tenant").

WHEREAS, Landlord owns and maintains an 80 foot freestanding communications tower ("Tower") upon a parcel of land located in Klamath County, Oregon;

WHEREAS, Tenant is currently an occupant on said Tower;

WHEREAS, the Lease expired on December 31, 1998 and Landlord and Tenant continue to uphold the rights and responsibilities under the Lease;

WHEREAS, Tenant would like to reinstate the lease with language allowing Tenant to remain at the site and Landlord has agreed to that request;

NOW THEREFORE, in consideration of these presents, the parties hereby agree that the Lease is now modified as follows:

I. Section 31, Renewal Terms, is hereby added:

Unless the Tenant gives the Landlord 60 day notice of Tenant's intention of not to renew the Lease, this Lease will automatically renew for two (2) additional five (5) year terms, subject to the same terms and conditions of the Lease. The right to renewal is subject to termination prior to the date set forth above if, for any reason, the Forest Service Permit is terminated prior to that date.

II. In all other respects the Lease is hereby ratified and affirmed without change.

IN WITNESS WHEREOF, the parties have caused these presents to be duly subscribed and are bound as of the day and year first above written.

[END OF AGREEMENT]

[SIGNATURE PAGE FOLLOWS]

**Signature Page**

LANDLORD:                                      TENANT:

**Western Radio Services Co., Inc.**          **United States Cellular Operating
                                               Company of Medford**

By: _~~signature~~_                            By: _~~signature~~_

Printed: _Richard L. Oberdorfer_                   Hichem Garnaoui
                                                   Vice President – Network Engineering
It's: _President_


STATE OF _Oregon_          )
                           )
COUNTY OF _Deschutes_      )

   I, the undersigned, a notary public in and for the State and County aforesaid, do hereby certify that _Richard Oberdorfer_, known to me to be the same person whose name is subscribed to the foregoing Addendum to Facilities Space Lease, appeared before me this day in person and acknowledged that he signed the said Amendment as his free and voluntary act for the uses and purposes therein stated.

   Given under my hand and seal this _16_ day of _May_, 2005

           _~~Monica Davies~~_
           Notary Public

OFFICIAL SEAL
MONICA DAVIS
NOTARY PUBLIC-OREGON
COMMISSION NO. 367758
MY COMMISSION EXPIRES MAR. 8, 2009

My commission expires _3|8|09_

STATE OF ILLINOIS _____ )
                                               )
COUNTY OF COOK _____ )

     I, the undersigned, a notary public in and for the State and County aforesaid, do hereby certify that **Hichem Garnaoui**, Vice President – Network Engineering, known to me to be the same person whose name is subscribed to the foregoing Addendum to Facilities Space Lease, appeared before me this day in person and acknowledged that, pursuant to his authority, he signed the said Lease as his free and voluntary act on behalf of the named Tenant corporation, for the uses and purposes therein stated.

     Given under my hand and seal this 31st day of May _____, 20 05

                                     Notary Public

```
"OFFICIAL SEAL"
DONALD L. DICKE
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/23/2007
```

     My commission expires 8/23/07

Site Name: Walker Mountain                                    Site Number: 349366

## FIRST AMENDMENT to FACILITIES SPACE LEASE

     **THIS FIRST AMENDMENT**, made the _17_ day of _November_ , 20*09*, modifies that certain *Facilities Space Lease* (the "Lease") dated March 1, 1993, by and between Western Radio Services Co., Inc., ("Landlord") an Oregon corporation, P.O. Box 1618, Bend, Oregon 97709 and United States Cellular Operating Company of Medford, an Oregon corporation, as successor in interest to Oregon RSA #6, Inc., Attention: Real Estate Department, 8410 West Bryn Mawr Avenue, Suite 700, Chicago, Illinois 60631 ("Tenant").

     **WHEREAS**, Landlord owns and maintains an 80' freestanding communications tower ("Tower") upon a parcel of land located in Klamath County, Oregon;

     **WHEREAS**, Tenant is currently an occupant on said Tower, and;

     **WHEREAS**, Landlord and Tenant executed the Addendum to Facilities Space Lease ("Addendum"), dated May 31, 2005, which added Section 31 Renewal Terms into and terms of the Lease, and;

     **WHEREAS**, said Addendum extended the term of the Lease until December 31, 2009; and,

     **WHEREAS**, the Landlord and Tenant wish to continue its contractual relation past that December 31, 2009 date and add terms to the Lease, and;

     **WHEREAS**, the Landlord has advised the Tenant that the Tower may be replaced and that Tenant shall relocate their antennas to the replacement tower, and;

     **NOW THEREFORE**, in consideration of these presents, the parties hereby agree that the Lease is now modified as follows:

     I.    Section 31, Renewal Terms, is hereby deleted and replaced with the following:

          Unless the Tenant gives the Landlord 60 day notice of Tenant's intention not to renew the Lease, this Lease shall automatically renew for four (4) additional five (5) year terms, subject to the same terms and conditions of the Lease. The parties acknowledge that the term of the Lease and right to renewal is subject to termination prior to the date set forth above if, for any reason, the Forest Service Permit is terminated prior to that date.

     II.    Section 32, Tower Substitution, is hereby added:

          The Tower described herein shall be deemed to refer with equal force and effect to a substitute tower proposed to be constructed in place of

�华 U.S. Cellular                        Page 1 of 3

USCELLULAR000043

Exhibit 3
Page 1 of 3

Site Name: Walker Mountain                                    Site Number: 349366

Landlord's existing tower. Tenant covenants to cooperate with the
Landlord in the removal of Tenant's antennas and their reattachment, at
approximately the same attachment height, upon any such substitute tower
following its construction.

III.    In all other respects the Lease is hereby ratified and affirmed without
change.

[END OF AGREEMENT]

**IN WITNESS WHEREOF**, the parties have caused these presents to be duly
subscribed and are bound as of the day and year first above written.

LANDLORD: Western Radio Services Co.,          TENANT:  United States Cellular Operating
Inc.                                           Company of Medford

By: _____                    By: _____

Printed: Richard L Oberdorf                     Printed: John C. Gockley

Title: President                                Title: Vice President

Date: 10-22-09                                  Date: November 17, 2009

★ U.S. Cellular                    Page 2 of 3

USCELLULAR000044

Exhibit 3
Page 2 of 3

Site Name: Walker Mountain

Site Number: 349366

STATE OF *NEVADA* )
)
COUNTY OF *CLARK* )

I, the undersigned, a notary public in and for the State and County aforesaid, do hereby certify that *Richard L Oberdorfer* known to me to be the same person whose name is subscribed to the foregoing First Amendment to Facilities Space Lease, appeared before me this day in person and acknowledged that he signed the said Amendment as his) free and voluntary act for the uses and purposes therein stated.

Given under my hand and seal this *22nd* day of *Oct*, 20 *09*.

*Mary Beth Clift*
Notary Public

My commission expires *1-29-12*

MARY BETH CLIFT
Notary Public, State of Nevada
Appointment No. 00-47796-1
My Appt. Expires Jan 29, 2012

STATE OF ILLINOIS )
)
COUNTY OF COOK )

I, the undersigned, a notary public in and for the State and County aforesaid, do hereby certify that ___John C. Gockley___, Vice President, for United States Cellular Operating Company of Medford, known to me to be the same person whose name is subscribed to the foregoing First Amendment to Facilities Space Lease, appeared before me this day in person and acknowledged that, pursuant to his authority, he signed the said Lease as his free and voluntary act on behalf of the named Tenant corporation, for the uses and purposes therein stated.

Given under my hand and seal this _17_ day of ___November___, 20 09.

*Karen F Wierer*
Notary Public

My commission expires ___01/04/13___

OFFICIAL SEAL
KAREN F WIERER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/04/13

✶ U.S. Cellular

Page 3 of 3

July 24, 2012

Mr. Wayne Davis
United States Cellular Operating Company of Medford
Via Fax: 773-341-7320

RE: Notice of Default Walker Mountain #349366

I have been asking your local employees for over a year to comply with the provision in our company's First Amendment to Facilities Space Lease dated November 17, 2009 which requires US Cellular to cooperate in the removal of tenant's antennas from the old tower. So far none of the antennas have been removed nor has there been any apparent effort by US Cellular towards removing the antennas.

In addition to the new USC microwave dish and ice shield on the new tower, the following has been approved for installation on the new tower:

6 each panel antennas mounted to the tower legs between the 72 and 80 foot levels
6 each 7/8 inch Heliax cable
3 each 6 foot microwave dishes at the same levels as on the old tower. Dishes and radomes must be gray in color as in Andrew gray.
2 additional ice shields as close to the antennas as possible.
3 each additional wave guides

USC has the option of relocating the existing omni antennas to the same level as on the old tower.

If US Cellular fails to cure the default within 30 days, Western will exercise its remedies under section 18 of the Lease.

If you have any questions, please contact me at 541-389-5286 or oberdorfer@earthlink.net.


Richard L. Oberdorfer
Western Radio Services Co.


Exhibit 4
Page 1 of 1



**U.S. Department of Justice**
*S. Amanda Marshall*
*United States Attorney*
*District of Oregon*
*1000 SW Third Avenue, Suite 600*          *(503) 727-1000*
*Portland, Oregon  97204-2902*      *Fax: (503) 727-1117*

Neil J. Evans
Assistant United States Attorney
direct line (503) 727-1053
neil.evans@usdoj.gov

August 2, 2012

Western Radio
Richard Oberdorfer
Marianne Dugan, Attorney
259 E. 5th Ave., Suite 200-D
Eugene, OR 97401

                    Re:    Walker Mountain

Dear Ms. Dugan:

        The United States Attorney's Office has received information that Western Radio and
Richard Oberdorfer are taking action(s) to place additional equipment on the unauthorized tower
on Walker Mountain.   The United States has sued Western Radio in U.S. District court for the
unlawful construction of that tower and is seeking its removal.

        The United States, through the Forest Service, has not authorized any additional work on
Walker Mountain by Western Radio, Richard Oberdorfer, or customers and tenants of Western
Radio.   Any activity involving the unauthorized tower, expansion of the existing building or
completion of the new generator pad is not authorized and is in violation of the Western Radio
lease as well as federal laws, both civil and criminal.   Independent of the pending lawsuit, the
United States will enforce all appropriate laws if there is any additional activity undertaken
without express authorization from the Forest Service or a Court Order.

                    Very truly yours,

                    S. AMANDA MARSHALL
                    United States Attorney

                    NEIL J. EVANS
                    Assistant United States Attorney

NJE:jes

Exhibit 5
Page 1 of 1



STOEL
RIVES
LLP
ATTORNEYS AT LAW

900 SW Fifth Avenue, Suite 2600
Portland, Oregon 97204
main 503.224.3380
fax 503.220.2480
www.stoel.com

STEVEN T. LOVETT
Direct (503) 294-9364
stlovett@stoel.com

August 15, 2012

**BY EMAIL AND U.S. MAIL**

Ms. Marianne Dugan
Attorney at Law
259 E 5th Avenue, Suite 200D
Eugene, OR 97401-2677

Re:    **July 24, 2012 Notice of Default Letter**

Dear Ms. Dugan:

As you know, we represent US Cellular Corporation (USCC) relating to Western Radio's demand that USCC remove its equipment from the "old tower" on Walker Mountain. When you and I spoke on August 1, 2012, I asked that Western Radio withdraw its July 24, 2012 notice of default until after the Court rules on the pending cross motions for summary judgment. You responded that you would talk with your client about that. I have not heard back from you.

By this letter, USCC again requests that Western Radio withdraw the notice of default until the Court rules. Western Radio has threatened to engage in self-help under section 18 of the lease if USCC does not remove its equipment. USCC believes that the notice of default is flawed because Western Radio may not have the lawful right to erect the new tower on the Forest Service property. Therefore, if Western Radio will not withdraw the notice of default, USCC will be forced to seek relief in court to avoid the possibility of losing service for its subscribers.

Very truly yours,

Steven T. Lovett

STL:csj

72250887.1 0060671-00006

Alaska  California  Idaho
Minnesota  Oregon  Utah  Washington

Exhibit 6
Page 1 of 1

**Lovett, Steven T.**

| | |
|---|---|
| **From:** | Marianne Dugan [mdugan@mdugan.com] |
| **Sent:** | Wednesday, August 15, 2012 1:36 PM |
| **To:** | Lovett, Steven T. |
| **Cc:** | 'Donald.Dicke@uscellular.com' |
| **Subject:** | Re: U.S. Cellular - August 15, 2012 Steve Lovett letter to Marianne Dugan |

Mr. Lovett –

As you know, unfortunately the Forest Service is suing to remove both towers (I presume you have the USA's complaint – please let me know if that is not the case). Since the old tower apparently may not comply with the new structural code, Western has decided to remove it to reduce litigation expense. Western therefore needs the equipment removed from that tower. NEPA has been completed on the removal of that tower.

At 11:02 AM 8/15/2012, Lovett, Steven T. wrote:
>Dear Ms. Dugan:
>
>Attached is an August 15, 2012 letter from Steven T. Lovett to you. The original will follow by U.S. mail.
>
>Sincerely,
>
>
>Cindy Johnson | Practice Assistant to:
>Steven T. Lovett, Steven E. Klein, Nathan C. Brunette
>STOEL RIVES LLP | Suite 2600
>900 SW Fifth Ave | Portland, OR 97204-1268
>Direct: (503) 294-9290 | Fax: (503) 220-2480
>cjohnson@stoel.com | www.stoel.com
>
>This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any unauthorized review, use, or distribution is prohibited and may be unlawful.
>
>
>

NOTICE: This and any attached documents are intended only for the use of the person to whom this is addressed and may contain information that is privileged, confidential, or work product and exempt from disclosure under applicable law. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited, and you are hereby requested to phone the sender immediately about the error, delete this message and attached documents, and destroy any printed copies.

Marianne Dugan, Attorney at law

"The things we admire in men, kindness and generosity, openness, honesty, understanding and feeling are the concomitants of failure in our system. And those traits we detest, sharpness, greed, acquisitiveness,

1

Exhibit 7
Page 1 of 2

meanness, egotism and self-interest are the traits of success.  And while men admire the quality of the first they love the produce of the second."  -John Steinbeck, Cannery Row, 1945

mdugan@mdugan.com

   [IF YOU GET ERROR MESSAGES USING THE ABOVE EMAIL ADDRESS - PLEASE USE mdugan@cldc.org -- AND SEND ME THE ERROR MESSAGE.]

259 E. 5th Ave., Suite 200-D
Eugene, OR  97401
541-338-7072
fax 866-650-5213
mdugan@mdugan.com
website http://www.mdugan.com

Handling cases involving federal environmental law, police misconduct, employment rights, property disputes (focus on easements and boundary disputes),  and professional malpractice.

Exhibit 7
Page 2 of 2