IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br> Plaintiff, <br> v. <br> **WESTERN RADIO SERVICES CO.,** <br> Defendant. <br><br> **UNITED STATES CELLULAR OPERATING COMPANY OF MEDFORD,** <br> Intervenor-Plaintiff, <br> v. <br> **WESTERN RADIO SERVICES CO.,** <br> Defendant. | Case No. 3:11-cv-00638-SI (Lead Case), <br> Case No. 6:11-cv-06209-SI <br><br> **OPINION AND ORDER** |

S. Amanda Marshall, United States Attorney, and Neil J. Evans, Assistant United States Attorney, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Plaintiff.

Marianne Dugan, 259 E. Fifth Avenue, Suite 200-D, Eugene, OR 97401. Attorney for Defendant.

**SIMON, District Judge.**

On August 29, 2012, the Court granted summary judgment for Plaintiff United States of America ("Forest Service" or "Plaintiff"), holding Defendant Western Radio Services Co. ("Western Radio" or "Defendant") liable for intentional trespass and breach of contract.

Dkt. 148. To remedy these wrongs, the Forest Service asked the Court to cancel Western Radio's lease and to order Western Radio to remove its trespassing structure, a radio communications tower that Western Radio constructed between 2010 and 2012. *See* Dkt. 160, 207. At oral argument on October 24, 2012, the Court declined to grant Plaintiff's requested relief for the breach of contract claim—the cancellation of the parties' lease agreement—because the parties had specifically agreed in their lease to an administrative revocation procedure should Western Radio fail to comply with the lease terms. Hr'g Tr. 48 Oct. 24, 2012; *see also Mohr v. Lear*, 395 P.2d 117, 121 (Or. 1964) ("The power of an equity court to cancel an instrument is discretionary; it is not one of absolute right, but rests in the discretion of the court, to be exercised in accordance with what is equitable and just under the circumstances."). The Forest Service initiated a revocation procedure in January 2013. As for the requested trespass remedy, the Court previously found that unresolved factual questions prevented the Court from determining the appropriate relief. *See* Dkt. 193.

After further consideration and upon additional briefing by the parties, the Court concludes that no factfinding is required before determining the appropriate remedy for Western Radio's intentional trespass. Further, Defendant does not have a constitutional right to a jury trial on the question of injunctive relief. *See, e.g.*, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).[1] The Court can therefore resolve the question of injunctive relief based on the papers before it.

The Forest Service seeks an injunction requiring Western Radio to remove the new tower from Forest Service property. To obtain a permanent injunction, a "plaintiff must demonstrate:

---

[1] The Forest Service has disclaimed its prior alternative request for punitive damages on the trespass claim. *See* Dkt. 207 at 3.

OPINION AND ORDER – Page 2

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *Id.*; *see also Knight v. Nyara*, 240 Or. App. 586, 248 P.3d 36, 42 (2011) (decision to grant injunction is within the discretion of the court when there is irreparable harm and no adequate legal remedy).

Western Radio's tower represents a continuing trespass on Forest Service land. *See* RESTATEMENT (SECOND) OF TORTS § 161. Monetary damages are thus inadequate to compensate for Plaintiff's harm because Plaintiff cannot recover damages for harm that has not yet occurred (*i.e.*, the future presence of the unwanted structure on Plaintiff's land), even though its occurrence is certain. *See* I DOBBS LAW OF REMEDIES § 5.5 at 752 (1993). Further, the harm of an unwanted structure on Plaintiff's land is irreparable because the "[r]ights of ownership [of real property] should not be lightly divested, encumbered, or impaired." *Jensen v. Probert*, 174 Or. 143, 148 P.2d 248, 255 (1944). The public interest would not be disserved by ordering Western Radio to remove its tower; if anything, the public interest favors the Forest Service's ability to manage public lands effectively.[2]

Finally, the Court determines that the balance of hardships favors Plaintiff's requested injunction. Fundamentally, the new tower was built on Forest Service land and the Forest Service

---

[2] Western Radio argues that communications users may be harmed by the tower's removal. Any such harm, however, would be the result of Western Radio's decision to place antennae on the new tower *after* the Forest Service instituted this action.

does not want it there. An unwanted structure built entirely on someone else's land is a different sort of harm to real property than an encroachment, a zoning violation, or a dispute over an easement. Thus, the factors considered in the encroachment, zoning, and easement cases relied upon by Western Radio are not particularly helpful in resolving the present dispute.[3] Unlike in those cases, Western Radio has no legitimate interest in the *location* of its structure, located as it is entirely on someone else's land. Western Radio does have a legitimate interest in the *structure itself*, which is why the Court will direct Western Radio to disassemble and remove the tower on its own, thereby allowing Western Radio an opportunity to mitigate its own harm by salvaging its structure for use at another location. The Court also does not find that the removal of the tower would be such a significant hardship for Defendant as to outweigh Plaintiff's interest in the full exercise of its property rights.[4]

Indeed, when a defendant has placed a structure on a plaintiff's property, it does not

---

[3] *See, e.g.*, *Swaggerty v. Peterson*, 280 Or. 739, 572 P.2d 1309 (1977) (zoning); *Hickman v. Six Dimension Custom Homes, Inc.*, 543 P.2d 1043 (Or. 1975) (zoning); *Zerr v. Heceta Lodge No. 111*, 269 Or. 174, 523 P.2d 1018 (1974) (encroachment); *Tauscher v. Andruss*, 401 P.2d 40 (1965) (encroachment); *Seagrove Owners Ass'n v. Smith*, 114 Or. App. 45, 834 P.2d 469 (1992) (restrictive covenant).

[4] As the Oregon Supreme Court explained in the context of an encroachment:

> It is not enough for the defendants to show that their damage will outweigh the plaintiffs' benefit; they must go further and show that their damage would be great and the plaintiffs' benefit would be relatively small. Since the defendants are in effect asking the court to recognize a kind of eminent domain for private purposes, the disproportion between their damage resulting from the removal of the encroachment and the plaintiffs' damage if the injunction is denied must be great.

*Tauscher v. Andruss*, 401 P.2d 40, 42 (1965). The defendant's burden must be even greater when the trespassing structure does not simply encroach on the plaintiff's property, but is located entirely within it.

OPINION AND ORDER – Page 4

necessarily matter whether the defendant acted in good or bad faith: an injunction requiring the defendant to remove the structure is an appropriate remedy. *See Scott v. Elliott*, 253 Or. 168, 451 P.2d 474, 479 (1969) (affirming injunction ordering trespasser to remove personal property from plaintiff's land); *Jensen v. Probert*, 174 Or. 143, 148 P.2d 248, 255 (1944) (because "equity has power to permit or require the removal from the true owner's land of buildings erected by mistake and in good faith by an occupier," directing lower court "to issue a mandatory injunction requiring the defendant Probert to remove the building from the property of the plaintiff … and to restore the land of the plaintiff to its former condition"); *Trunnell v. Tonole*, 104 Or. 628, 208 P. 583, 584 (1922) ("There is abundant authority for the doctrine that … if, by mistake, one erects his building on the land of another, the landowner on his part may by mandatory injunction compel the removal of the building; and, on the other hand, the man who erected the building may by proper proceeding have leave to remove the same on payment of any damage accruing to the freehold.").[5]

The Court therefore ORDERS as follows:

1.Within thirty (30) days of this Order, Defendant shall submit to the Forest Service a detailed schedule for removing the new radio tower and all accompanying structures (*i.e.*, the tower base, concrete pad, and adjoining building) and for restoring the site to its prior condition, as well as the identity of the contractors who will assist with the removal and restoration process.

---

[5] *See also* I DOBBS LAW OF REMEDIES §§ 5.5, 5.8(3), 5.10(3); RESTATEMENT (SECOND) OF TORTS § 161 reporter's note ("In a proper case an injunction will be granted to compel the actor to remove from the land a structure … wrongfully placed there by him."); *accord, e.g.*, *United States v. Grabler*, 907 F. Supp. 499, 507 (D. Mass. 1995) (enjoining defendant to remove tennis court built partially on land owned by the U.S. Army Corps of Engineers); *City & Cnty. of Dallas Levee Imp. Dist. v. Carroll*, 203 S.W.2d 307, 310 (Tex. Civ. App. 1953) (mandatory injunction for defendant to remove garage built on public property).

   2. All trespassing structures (tower, tower base, concrete pad, and adjoining building) shall be removed no later than August 15, 2013, and all restoration of the site shall be completed by August 30, 2013.

   3. The Plaintiff shall submit a proposed form of judgment pursuant to Federal Rule of Civil Procedure 54(b) consistent with this Opinion and Order.

   Dated this 3rd day of May, 2013.

               /s/ Michael H. Simon
               Michael H. Simon
               United States District Judge