# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:11-cv-00638-SI (Lead Case), |
| Plaintiff, | Case No. 6:11-cv-06209-SI |
| v. | |
| **WESTERN RADIO SERVICES CO.,** | **OPINION AND ORDER** |
| Defendant. | |
| | |
| **UNITED STATES CELLULAR OPERATING COMPANY OF MEDFORD,** | |
| Intervenor-Plaintiff, | |
| v. | |
| **WESTERN RADIO SERVICES CO.,** | |
| Defendant. | |

S. Amanda Marshall, United States Attorney, and Neil J. Evans, Assistant United States Attorney, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Plaintiff.

Steven Lovett, Nathan Brunette, and Crystal Chase, Stoel Rives LLP, 900 S.W. Fifth Avenue, Suite 2600, Portland, OR 97204. Attorneys for Intervenor-Plaintiff

Marianne Dugan, 259 E. Fifth Avenue, Suite 200-D, Eugene, OR 97401. Attorney for Defendant.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Western Radio Services Co. ("Western Radio" or "Defendant") leases land on Walker Mountain from the U.S. Forest Service ("Forest Service" or "Plaintiff") on which Western Radio maintains a communications tower, a support building, and a generator pad (collectively, "Original Tower"). Beginning in August 2010, Western Radio constructed a new communications tower at the same site ("New Tower"). In the underlying action, the Court has held that Western Radio breached its lease with the Forest Service when it constructed the New Tower without receiving final approval from the Forest Service and that the New Tower was therefore a continuing trespass on the Forest Service's land. Dkt. 148. The Court has ordered Western Radio to remove all trespassing structures and to restore the site by August 30, 2013. Dkt. 215.

Under a series of agreements with Western Radio, U.S. Cellular Operating Company of Medford ("U.S. Cellular" or "Intervenor-Plaintiff") leases the right to place cellular telephone and related microwave antennas and other equipment on Western Radio's tower on Walker Mountain. An amendment to the lease, signed in November 2009, provides that the tower described in the lease refers "with equal force and effect to a substitute tower proposed to be constructed in place of [Western Radio's] existing tower" and that U.S. Cellular "covenants to cooperate with [Western Radio] in the removal of [U.S. Cellular's] antennas and their reattachment … upon any such substitute tower following its construction." Davis Decl., Ex. 3, Dkt. 214-3.

On July 24, 2012, while the Forest Service's summary judgment motion was pending in the underlying case, Western Radio sent a letter to U.S. Cellular demanding that U.S. Cellular move its equipment to the New Tower ("demand letter"). Specifically, the demand letter asserted that U.S. Cellular was not complying with the lease amendment and that "[i]f US Cellular fails to

cure the default within 30 days, Western [Radio] will exercise its remedies under section 18 of the lease." Davis Decl., Ex. 4, Dkt. 214-4. Section 18 of the lease allows Western Radio, upon default by U.S. Cellular, to terminate the lease and to remove U.S. Cellular's equipment from Western Radio's tower, among other possible remedies. Davis Decl., Ex. 1 at § 18, Dkt. 214-1.

Aware that the Forest Service considered the New Tower to be unauthorized and was seeking its removal in the underlying action, U.S. Cellular moved to intervene, Dkt. 125, and sought a temporary restraining order ("TRO") to prevent Western Radio from declaring U.S. Cellular in breach of its lease or removing any of U.S. Cellular's equipment from the Original Tower, Dkt. 127. The Court granted the motion to intervene, Dkt. 133; granted the motion for a TRO, Dkt. 144; and subsequently issued a preliminary injunction to the same effect, Dkt. 179, which remains in force. In its amended complaint, U.S. Cellular asserts claims against Western Radio for anticipatory breach of contract and for declaratory judgment. Dkt. 181. U.S. Cellular now moves for summary judgment on both claims, Dkt. 211, which the Court GRANTS for the reasons that follow.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the

PAGE 3 – OPINION AND ORDER

plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations and citation omitted).

## DISCUSSION

In its first claim, U.S. Cellular seeks a declaration that U.S. Cellular is not in breach of the lease, that the demand letter was invalid, that Western Radio breached the lease by demanding U.S. Cellular move its equipment to the trespassing New Tower, and that U.S. Cellular has the right under the lease to maintain its equipment on the Original Tower. *See* Am. Compl. ¶ 35, Dkt. 181; Mot. Summ. J., Dkt. 211. In its second claim, U.S. Cellular asserts Western Radio has breached the lease through anticipatory repudiation, and it asks the Court to compel Western Radio's specific performance of its contractual obligations.

### A.  Declaratory Judgment Act Claim

Both of U.S. Cellular's claims require interpreting the parties' contract.[1] When interpreting a contract under Oregon law, the court first determines whether the disputed provision is ambiguous, and if it is not, it determines the meaning of the unambiguous provision. *Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997); *Apeldyn Corp. v. Eidos, LLC*, --- F. Supp.

---

[1] Western Radio argues that U.S. Cellular's lease has terminated by its own terms because the Forest Service–Western Radio lease has been terminated. *See* Davis Decl., Ex. 1 at § 7, Dkt. 214-1 ("The parties acknowledge that the term of this Lease is subject to termination prior to the date set forth above if, for any reason, the Forest Service Permit is terminated prior to that date."). The Forest Service has indeed started the administrative process of revoking Western Radio's ground lease. Pl.'s Resp. Br. Remedies, Ex. B, Dkt. 207-2. As far as the Court is aware, however, this administrative process has not yet resulted in a final determination, and Western Radio has not presented any evidence to the contrary. Indeed, Western Radio's principal, Richard Oberdorfer, stated that "Western Radio is currently exhausting its administrative remedies regarding that purported revocation [of the Forest Service–Western Radio lease]." Oberdorfer Decl., Dkt. 217, at ¶ 6. Until any revocation decision is final, the lease between Western Radio and U.S. Cellular remains in effect.

PAGE 4 – OPINION AND ORDER

2d ----, 2013 WL 1412866, at *2 (D. Or. Apr. 8, 2013). Both of these are questions of law and

may therefore be resolved at summary judgment. *See Williams v. RJ Reynolds Tobacco Co.*, 271

P.3d 103, 109 (Or. 2011); *Yogman*, 937 P.2d at 1021. To determine whether the provision is

ambiguous, the Court "considers the text of the disputed provision in the context of the contract

as a whole." *Id.*; *see also, e.g.*, *James v. Clackamas Cnty.*¸ 299 P.3d 526, 532 (Or. 2013);

*Anderson v. Jensen Racing, Inc.*, 931 P.2d 763, 765 (Or. 1997). "A contractual provision is

ambiguous if its wording can, *in context*, reasonably be given more than one plausible

interpretation." *Williams*, 271 P.3d at 109 (emphasis added). In considering the context of the

contract as a whole, "[t]he court's goal is to give effect to the intention of the contracting

parties." *Anderson*, 931 P.2d at 765; *see also James*, 299 P.3d at 532.

 The November 2009 lease amendment provides in full:

> The Tower described herein shall be deemed to refer with equal
> force and effect to a substitute tower proposed to be constructed in
> place of Landlord's existing tower. Tenant covenants to cooperate
> with the Landlord in the removal of Tenant's antennas and their
> reattachment, at approximately the same attachment height, upon
> any such substitute tower following its construction.

Davis Decl., Ex. 3, Dkt. 214-3. The "Tower" is defined in the recitals to the original lease:

> WHEREAS, Lessor owns and maintains an 80-foot freestanding
> communications tower (the "Tower") and facilities building (the
> "Building") located upon a parcel of land (the "Site") at a
> community antenna farm upon the geological feature known as
> "Walker Mountain" near Crescent, Klamath County, Oregon, that
> Lessor occupies pursuant to a Special Use Permit issued by the
> U.S. Department of Agriculture, Forest Service (the "Forest
> Service Permit") ….

Davis Decl., Ex. 1 recitals, Dkt. 214-1. The lease also includes a "quiet enjoyment" provision,

under which Western Radio covenants that U.S. Cellular "shall have quite and peaceable

possession of the Premises throughout the Lease term as the same is renewed and extended, and

that Lessor shall not default under the Forest Service Permit or intentionally terminate the same."

*Id.* at § 25.

U.S. Cellular argues that the New Tower is not a "substitute tower" under the lease amendment. The Court agrees. A "substitute" is a replacement, and a lawful, functional replacement of the Original Tower would comply with the Forest Service–Western Radio lease and be lawfully available for U.S. Cellular's occupancy. *See* Davis Decl., Ex. 3, Dkt. 214-3 (describing substitute tower as one "to be constructed *in place of* Landlord's existing tower" (emphasis added)). This follows from the definition of "Tower" in the lease's recitals, and it is the only meaning of "substitute tower" that would conform with Western Radio's obligations under the quiet enjoyment provision. *See Miller v. Miller*, 555 P.2d 1246, 1250 (Or. 1976) (holding that recitals are part of a contract and must be considered as part of the contract's context when interpreting operative provisions of the contract). The term "substitute tower" is thus not ambiguous because there is no other plausible interpretation of the lease amendment when considered in the context of the contract as a whole. *See Williams*, 271 P.3d at 109. Western Radio's apparent position that any tower it may construct on Walker Mountain is a "substitute tower" onto which U.S. Cellular must move its equipment pursuant to the lease amendment, regardless of any legal challenges to the tower's construction, is not reconcilable with Western Radio's covenant to ensure U.S. Cellular's quiet enjoyment in compliance with the Forest Service lease. Because this Court has held that the New Tower violates Western Radio's lease with the Forest Service and is a continuing trespass on Forest Service land, it is not lawfully available for U.S. Cellular's use and thus not a "substitute tower." There being no substitute tower within the meaning of the lease amendment, U.S. Cellular did not breach any contractual commitment when it refused to move its equipment from the Original Tower, for which it continues to hold a valid lease.

PAGE 6 – OPINION AND ORDER

In response, Western Radio argues that U.S. Cellular has not complied with its other obligations under the parties' lease. Resp. Mot. Summ. J., Dkt. 216, at 7. These appear to be new allegations. Under the terms of the lease, U.S. Cellular can only be considered in default if it fails to cure any violation of a lease provision (other than those regarding rent or other charges) within thirty days of written notice from Western Radio. Davis Decl., Ex. 1 at § 18, Dkt. 214-1. Because Western Radio has submitted no evidence that it has given such notice to U.S. Cellular for these or any other alleged violations of the lease, it has not identified a genuine dispute as to whether U.S. Cellular has breached the parties' lease.

There being no genuine issue of material fact regarding the interpretation of the parties' lease, the Court can resolve U.S. Cellular's claim for declaratory judgment as a matter of law. The Court therefore holds and declares that U.S. Cellular is not in breach of its lease with Western Radio, that the lease amendment does not require U.S. Cellular to move its equipment from the Original Tower to the trespassing New Tower, and that Western Radio's demand letter is invalid. Because U.S. Cellular has not breached the lease, it continues to have the right under the lease to maintain its equipment on the Original Tower during the remaining term of the lease.[2] The Court further holds that Western Radio's unfounded demand that U.S. Cellular remove its equipment from the Original Tower breached the lease's quiet enjoyment provision. *See* Davis Decl., Ex. 1 at § 25, Dkt. 214-1.

## B.  Anticipatory Breach

U.S. Cellular also argues that Western Radio's demand letter constituted an anticipatory repudiation of the lease. "A party repudiates a contract when its conduct evinces a fixed purpose not to perform the contract." *Butler Block, LLC v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 255 P.3d

---

[2] The lease is currently set to expire on December 31, 2014. *See* Davis Decl., Ex. 3, Dkt. 214-3.

665, 674 (Or. Ct. App. 2011). The repudiating party's refusal to perform must be made

"positively, unconditionally, unequivocally, distinctly and absolutely." *Swick v. Mueller*, 238

P.2d 717, 720 (Or. 1951).

U.S. Cellular has submitted the following evidence that Western Radio positively,

unequivocally, and absolutely repudiated its contractual obligation to ensure U.S. Cellular's

"quiet and peaceable possession of the Premises": First, Western Radio's demand letter stated

that if U.S. Cellular did not comply with the lease amendment's requirement to move its

equipment within thirty days, Western Radio would exercise its remedies under Section 18 of the

lease. Davis Decl., Ex. 4, Dkt. 214-4. Section 18 allows Western Radio to terminate the lease, to

remove U.S. Cellular's equipment from the Original Tower at U.S. Cellular's expense, and to

accelerate U.S. Cellular's rent for the remainder of the lease term. Davis Decl., Ex. 1 at § 18,

Dkt. 214-1. Second, U.S. Cellular requested that Western Radio withdraw the default letter, but

Western Radio's attorney responded that Western Radio had decided to remove the Original

Tower, and therefore it needed U.S. Cellular to take its equipment down from the Original

Tower. Compl. Ex. 7, Dkt. 181. Third, in his deposition, Western Radio's principal Richard

Oberdorfer stated that: (i) he believes the New Tower to constitute a "substitute tower" under the

lease amendment; (ii) he did not change his opinion even after receiving this Court's Order

holding the New Tower to be a trespass; and (iii) he still believes U.S. Cellular is required to

move its equipment to the New Tower. Brunette Decl. Ex. 1, Dkt. 213-1, at 4. Oberdorfer also

stated that "[t]he old tower is going to come down no matter what happens on the new tower," *id.*

at 5, and that Western Radio intended to take down both U.S. Cellular's equipment and the old

tower as soon as possible in the absence of a preliminary injunction, *id.* at 7.

The only evidence submitted by Western Radio in response is Oberdorfer's declaration

that "Western [Radio] had no intention to remove [U.S. Cellular's] equipment from Walker

Mountain." Oberdorfer Decl., Dkt. 217, at ¶ 4.  The Court understands Western Radio to be

arguing that it did not breach its covenant of quiet enjoyment because it offered U.S. Cellular

space on the New Tower to relocate its equipment. The Court has held, however, that the New

Tower is not a "substitute tower" under the lease amendment, which means that space on the

New Tower does not satisfy Western Radio's obligations under the lease. In other words,

because there is no "substitute tower" within the meaning of the lease amendment, the lease

requires Western Radio to continue providing space to U.S. Cellular on the Original Tower.

The Court finds that the evidence submitted by U.S. Cellular shows Western Radio's

clear and unequivocal repudiation of its obligations under the lease. There is no contrary

evidence and thus no genuine dispute for a finder of fact to resolve. The Court therefore holds

that Western Radio breached the lease through anticipatory repudiation.

## C.  Permanent Injunction

U.S. Cellular seeks a permanent injunction compelling Western Radio's specific

performance of the lease, either through the remainder of the lease term or until the Forest

Service's pending revocation of its lease with Western Radio at Walker Mountain becomes final.

To obtain a permanent injunction, a "plaintiff must demonstrate: (1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate

to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4) that the public interest would not be

disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391

(2006). "The decision to grant or deny permanent injunctive relief is an act of equitable

discretion by the district court[.]" *Id.*; *see also Knight v. Nyara*, 240 Or. App. 586, 248 P.3d 36,

42 (2011) (decision to grant injunction is within the discretion of the court when there is

PAGE 9 – OPINION AND ORDER

irreparable harm and no adequate legal remedy).

As this Court previously found, if Western Radio unilaterally removes U.S. Cellular's equipment from the Original Tower, U.S. Cellular will suffer irreparable harm due to the loss of operations within its cellular telephone network and the resulting loss of goodwill within the affected service area. *See* Prelim. Inj. Order, Dkt. 179; Briedwell Supp. Decl. ¶¶ 38-46, Dkt. 166 *see also Cellco P'ship v. Hope*, 469 F. App'x 575, 577 (9th Cir. 2012) (in affirming a preliminary injunction, holding that evidence of a communications company's threatened loss of wireless customers or goodwill supported a finding of irreparable harm, citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001)). Removal of U.S. Cellular's equipment from Walker Mountain would result in the loss of service to 2,606 square miles; thousands of calls each day would be affected. Briedwell Supp. Decl. ¶¶ 18, 21-22, Dkt. 166. Monetary damages could not adequately compensate U.S. Cellular for this loss of customers and harm to its business reputation. The Court continues to find that U.S. Cellular's hardship in having its equipment unilaterally removed outweighs the hardship to Western Radio of maintaining the Original Tower as the parties' lease obligates Western Radio to do, and that the public interest is served in avoiding a disruption of cellular service around the Walker Mountain site. *See* Prelim. Inj. Order, Dkt. 179. In particular, the Court notes that a significant disruption in U.S. Cellular's service would affect not only its own customers, but also other wireless communications users who could experience secondary degradation in cellular telephone service or have greater difficulty placing E-911 calls in the affected areas. Briedwell Supp. Decl. ¶¶ 28-36, Dkt. 166.

Western Radio's only evidence in opposition to the permanent injunction is Oberdorfer's declaration. Oberdorfer states that U.S. Cellular's service has been interrupted in the past due to

winter storms and equipment failure, yet U.S. Cellular "has continued to maintain acceptable service quality." Oberdorfer Decl., Dkt. 217, at ¶ 5. He also declares that "[U.S. Cellular's] coverage area is inferior to Verizon's coverage because [U.S. Cellular] has decided to not match Verizon's coverage area by operating fewer cell sites" and that "[w]ireless customers have learned not to expect 100% reliable service everywhere and all the time." *Id.* These self-serving statements are insufficient to establish a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e). "[W]here, as here, the nonmoving party relies only on his own affidavit to oppose summary judgment, '[he] cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.'" *Delange v. Dutra Constr. Co., Inc.*, 183 F.3d 916, 921 (9th Cir. 1999) (quoting *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam)) (alteration in original).

U.S. Cellular's request for a permanent injunction is therefore GRANTED.  It is hereby ORDERED that Western Radio, its officers, agents, employees, directors, shareholders, attorneys, or any persons acting in active concert or participation with any of them are RESTRAINED AND ENJOINED from doing any of the following:

1.      From declaring U.S. Cellular in breach of the parties' lease due to U.S. Cellular's refusal to remove its equipment from the Original Tower;

2.      From taking any action that is intended to or that actually does directly or indirectly cause the removal of U.S. Cellular's equipment from its current position on the Original Tower at the Walker Mountain site, including but not limited to (i) terminating the parties' lease or directly or indirectly threatening to do so, (ii) removing or causing any person to remove U.S. Cellular's equipment from its current position on the Original Tower at the Walker Mountain site or threatening to do so, and (iii) accelerating the balance of rent owed under the

parties' lease or threatening to do so; and

      3.     From otherwise interfering with U.S. Cellular's quiet enjoyment under the parties' lease; except that

      4.     To the extent necessary to comply with this Court's Order dated May 3, 2013, directing Western Radio to remove all unauthorized improvements at the Walker Mountain site, Western Radio may remove U.S. Cellular's equipment that is currently located on the New Tower that has not been previously removed by U.S. Cellular. Before removing any of U.S. Cellular's equipment from the New Tower, however, Western Radio must provide prior written notice to counsel for U.S. Cellular and the Forest Service at least 72 hours in advance, and such written notice shall indicate the exact date, time, and manner of the planned removal. Any such removal must also accord with the detailed schedule that the Court ordered Western Radio to submit to the Forest Service by June 3, 2013. In removing the unauthorized improvements from the Walker Mountain site, Western Radio shall not otherwise disturb U.S. Cellular's equipment.

This Order shall remain in effect for the duration of the parties' lease, subject to being dissolved or extended further during that time by the Court.

## D. Attorney's Fees

Finally, U.S. Cellular seeks attorney's fees pursuant to the parties' lease. The lease provides that, "[i]f suit or action is instituted in connection with any controversy arising out of this Lease, the prevailing party shall be entitled to recover, in addition to costs, such sum as the Court may adjudge reasonable as attorney fees in said suit or action or appeal therefrom." Davis Decl., Ex. 1 at § 30, Dkt. 214-1. U.S. Cellular intervened in this matter and filed a complaint against Western Radio in connection with a controversy arising out of the parties' lease, and U.S. Cellular is the prevailing party. Therefore, U.S. Cellular is entitled to attorney's fees in a "sum as the Court may adjudge reasonable," and U.S. Cellular may submit a fee petition pursuant to

Federal Rule of Civil Procedure 54(d)(2) as appropriate.

<strong>CONCLUSION</strong>

The Court therefore GRANTS Intervenor-Plaintiff's Motion for Summary Judgment, Dkt. 211, and permanently ENJOINS AND RESTRAINS Defendant according to the terms stated herein.

**IT IS SO ORDERED**.

DATED this 11th day of June, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge